LOTOSZINSKI v STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY

Docket No. 64339. Argued December 9, 1980 (Calendar No. 2).—Decided December 23, 1982.

Mary Kay Lotoszinski was injured when the motorcycle on which she was a passenger was struck by an automobile. She was a minor at the time of the accident. She obtained a judgment against the driver and the owner of the automobile in the amount of $180,000, and her mother obtained a judgment in excess of $10,000 for Mary Kay's medical bills. The payments to her mother and to the driver of the motorcycle exhausted the liability insurance coverage of the owner and the operator of the automobile. Subsequently, they were discharged in bankruptcy, and Mary Kay was unable to collect the judgment. She then filed a claim for benefits under the uninsured motorist provisions of her policy with State Farm Mutual Automobile Insurance Company. State Farm denied coverage. Mary Kay brought an action in the Ingham Circuit Court seeking to compel arbitration under the terms of the policy. The court ordered arbitration, and, after an arbitration hearing, an award favorable to State Farm was entered. The Ingham Circuit Court, Jack W. Warren, J., denied the plaintiff's motion to vacate the award. The Court of Appeals, Danhof, C.J., and D. C. Riley, J. (N. J. Kaufman, J., dissenting), affirmed (Docket No. 78-3303). The plaintiff appeals.

In an opinion written by the late Justice Moody, adopted as their own by Chief Justice Fitzgerald and Justices Williams, Coleman, and Ryan, the Supreme Court held:

A person may not collect benefits under his own uninsured motorist insurance policy when a tortfeasor's liability insurance policy limits meet the statutorily required limits but are exhausted by other claimants and the tortfeasor is uncollectible.

1. The Legislature, in requiring automobile liability insur-

REFERENCES FOR POINTS IN HEADNOTES
[1-4] 7 Am Jur 2d, Automobile Insurance § 322.
[2] 7 Am Jur 2d, Automobile Insurance §§ 318, 319.

ance policies to include an offer of uninsured motorist 'protection for policyholders, intended the term "uninsured" to mean plainly *not* insured. The purpose of the coverage was to protect the public from a noninsured, financially irresponsible motorist, not one who was insufficiently insured. The only other situation in which such coverage was available was where the tortfeasor's insurer was insolvent. In this case, the owner and · the operator of the automobile were insured for the statutorily required minimum amount. Their insurer was solvent and paid claims to the policy limit. They were not uninsured under the plain meaning of the statute. The arbitrators correctly applied the law in reaching their decision.

2. The minimum limits for uninsured motorist coverage required by the statute guaranteed a minimum level of coverage for each accident. The limits were not intended to guarantee a minimum amount which could be recovered by each person injured in an accident. The amounts of the limits for accidents involving one injured person and those involving two or more injured persons make it obvious that the Legislature knew that no minimum amount of recovery would be guaranteed where more than two persons were injured.

Affirmed.

94 Mich App 164; 288 NW2d 369 (1979) affirmed.

Justice Levin, joined by Justice Kavanagh, dissented. A person who pays an additional premium· to obtain protection against an uninsured motorist is entitled to recover to the extent of the uninsured motorist coverage where the vehicle of the other person involved in an accident is insured, but the insurance is exhausted by payment to other injured persons. A standard insurance policy is not an ordinary contract. Its terms are not negotiated and vary little from one insurer to another. A policy of insurance, like other products marketed for mass consumption, can be expected to be free of substantial defects; an uninsured motorist clause which does not protect the insured in such a situation is defective. It is the responsibility of the courts to protect against imposition in commercial transactions. Fairness is the proper inquiry where a court is assessing policy language marketed and purchased without negotiation or explanation of the scope of the coverage. The governing rule of law cannot rightfully be predicated on the assumption that the buyer would read the policy, that if she did read it she would or could understand its esoteric verbiage, anticipate the situation which developed, and deduce that she was not covered.

OPINION OF THE COURT

1. AUTOMOBILES — INSURANCE — EXHAUSTION OF LIMITS — UNINSURED MOTORIST PROTECTION.

A person who is injured in a motor vehicle accident may not collect benefits under his own uninsured motorist insurance policy where the tortfeasor is insured for the statutorily required minimum limits and the limits of the policy are exhausted by other claimants, even though the tortfeasor is uncollectible (MCL 257.504[d]; MSA 9.2204[d], since repealed by 1971 PA 138; MCL 500.3010; MSA 24.13010, since repealed by 1972 PA 345).

2. AUTOMOBILES — INSURANCE — EXHAUSTION OF LIMITS — UNINSURED MOTORIST PROTECTION.

The Insurance Code provided that a person who was injured in a motor vehicle accident and who was covered by his own uninsured motorist insurance policy was entitled to benefits from his insurer where the other party involved in the accident was uninsured or where that person's insurer was insolvent; the term "uninsured" plainly was intended to mean "not insured", and the insurance coverage was not intended to provide additional protection when the limits of the tortfeasor's liability policy were exhausted by other claimants (MCL 500.3010; MSA 24.13010, since repealed by 1972 PA 345).

3. AUTOMOBILES — INSURANCE — UNINSURED MOTORIST PROTECTION — LIMITS OF COVERAGE.

The Insurance Code provided minimum limits for uninsured motorist coverage which were intended to guarantee a minimum level of coverage for each accident, not a minimum amount which could be recovered by each person injured in the accident (MCL 257.504[d]; MSA 9.2204[d], since repealed by 1971 PA 138).

DISSENTING OPINION BY LEVIN, J.

4. AUTOMOBILES — INSURANCE — EXHAUSTION OF LIMITS — UNINSURED MOTORIST PROTECTION.

*A person who is injured in a motor vehicle accident and who has paid an additional premium to obtain protection against an uninsured motorist is entitled to recover to the extent of the uninsured motorist coverage where the vehicle of the other person involved in the accident is insured, but that insurance is exhausted by payment to other injured persons (MCL 500.3010; MSA 24.13010, since repealed by 1972 PA 345).*

*Stiles, Fowler & Tuttle* (by *Larry D. Fowler)* for plaintiff.

*Fraser, Trebilcock, Davis & Foster, P.C.* (by *Everett R. Trebilcock),* for defendant.

FITZGERALD, C.J., and WILLIAMS, COLEMAN, and RYAN, JJ. This opinion was written by Justice BLAIR MOODY, JR., prior to his death on November 26, 1982. We concur in this opinion and adopt it as our own.

The substantive issue presented in this pre-no-fault[1] case is whether a person injured in a motor vehicle accident may recover benefits from his or her own uninsured motorist insurance policy when the tortfeasor's liability insurance policy limits are exhausted by other claimants and the tortfeasor is uncollectible.

Consistent with the unambiguous language of MCL 500.3010; MSA 24.13010,[2] we hold that a

___

[1] MCL 500.3101 *et seq.;* MSA 24.13101 *et seq.*

[2] At the time of the accident, this statute read as follows:

"No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto in limits for bodily injury or death set forth in section 504 of Act No. 300 of the Public Acts of 1949, as amended, being section 257.504 of the Compiled Laws of 1948, under provisions approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles, including owners or operators insured by an insolvent insurer, because of bodily injury, sickness or disease, including death, resulting therefrom, unless the named insured rejects such coverage in writing as provided herein. All such policies shall contain a notice, displayed prominently on the front page of the policy, in at least 8-point type that such protection coverage was explained to him and that he can reject such coverage by notice in writing. Unless the named insured requests such coverage in writing, it need not be provided in or supplemental to a renewal policy where the named insured has rejected the coverage in connection with a policy previously issued to him by the same insurer."

person may not collect benefits from his or her own uninsured motorist policy when the tortfeasor's insurance coverage meets the statutorily required limits.

Plaintiff, Mary Kay Lotoszinski, then a minor, was injured on June 3, 1971, when a motorcycle on which she was a passenger collided with an automobile driven by Norma Jean Hunter. The automobile was owned by Norma Jean's husband, Richard Hunter. The Hunter vehicle was insured by Auto-Owners Insurance Company for the minimum limits allowed by statute.[3]

Plaintiff obtained a judgment against the Hunters in the amount of $180,000. Her mother, Margaret Lotoszinski, obtained a judgment in excess of $10,000 for the medical bills of her minor daughter. The Hunters' insurer paid Margaret Lotoszinski $10,000. The driver of the motorcycle had previously been paid $10,000. These payments exhausted the limits of the Hunters' liability insurance, and Mary Kay received nothing. She was also unable to collect from the Hunters, who were discharged in bankruptcy.

Plaintiff then filed a claim under the uninsured motorist provisions of the separate policies issued by defendant, State Farm Mutual Automobile Insurance Company, to Mary Kay and her mother. The policies provided for arbitration of claims made under the uninsured motorist provisions. State Farm denied coverage under the relevant policy provisions and refused to proceed to arbitration. Plaintiff filed suit in the Ingham Circuit

---

[3] MCL 257.504(d); MSA 9.2204(d) set minimum limits of "$10,000.00 because of bodily injury to or death of 1 person in any one accident, and, subject to said limit for 1 person, to a limit of not less than $20,000.00 because of bodily injury to or death of 2 or more persons in any one accident". The minimum limits were increased to $20,000 and $40,000 respectively effective October 1, 1971. 1971 PA 67.

Court demanding arbitration, which the circuit court ordered. After an arbitration hearing, an award favorable to defendant was entered.

Plaintiff's motion to vacate the arbitration award was denied. The Court of Appeals affirmed, stating that because the arbitrators had not exceeded their authority, the Court had no authority to overturn their decision. *Lotoszinski v State Farm Mutual Automobile Ins Co,* 94 Mich App 164; 288 NW2d 369 (1979). This Court granted leave to appeal. 408 Mich 960 (1980).

The initial issue presented is the standard of review to be employed by the courts when reviewing arbitration decisions. This issue was recently addressed by this Court in *DAIIE v Gavin* and *DAIIE v Standfest,* 416 Mich 407, 443; 331 NW2d 418 (1982). The judicial standard of review adopted therein was as follows:

> " 'Where it clearly appears on the face of the award or the reasons for the decision as stated, being substantially a part of the award, that the arbitrators through an error in law have been led to a wrong conclusion, and that, but for such error, a substantially different award must have been made, the award and decision will be set aside.' "

This is the standard we now follow in determining whether the instant arbitration award should be vacated.

The substantive issue presented is whether a person injured in a motor vehicle accident may recover under the uninsured motorist provision of his or her own policy of insurance when the tortfeasor's liability insurance policy limits are exhausted by other claimants and the tortfeasor is uncollectible because of bankruptcy.

Plaintiff advances two theories which she con-

tends justify recovery. First she contends that Norma Jean Hunter was an "uninsured motorist" as the Legislature used that term in MCL 500.3010; MSA 24.13010. Second, she contends that Norma Jean Hunter was an "uninsured motorist" as that term is defined in her policy with State Farm. Thus, plaintiff believes she is entitled to recover both under the statute and the language of her policy.

Defendant replies that the Hunters were insured both under the terms of the statute and their policy with plaintiff. Thus, neither justifies plaintiff's recovery.

Plaintiff's policy included uninsured motorist coverage, in compliance with the provisions of MCL 500.3010; MSA 24.13010. Plaintiff contends that the Legislature's purpose in requiring uninsured motorist coverage was to provide a minimum recovery to innocent motorists so insured. In support of this contention plaintiff cites *Porter v Empire Fire & Marine Ins Co,* 106 Ariz 274; 475 P2d 258 (1970), *modified* 106 Ariz 345; 476 P2d 155 (1970).[4] In *Porter* the plaintiff was one of several victims of an accident caused by a negligent motorist who carried the minimum amount of insurance required by statute. Porter's pro-rata recovery from the tortfeasor's insurer was $2,500, an amount insufficient to compensate him for his injuries. He then sought to recover under his own uninsured motorist coverage an additional $7,500, the difference between the statutory minimum of $10,000 and his $2,500 recovery.

The *Porter* court opined that "[t]he uninsured policy is issued for the protection of the insured in

[4] Plaintiff also relies on *Gorton v Reliance Ins Co,* 137 NJ Super 558; 350 A2d 77 (1975). We note that this decision was reversed. 77 NJ 563; 391 A2d 1219 (1978).

the minimum amount provided in the Financial Responsibility Act." *Porter,* 106 Ariz 279. The court drew an analogy between Porter's situation and other cases in which, although the tortfeasors had some form of insurance, the insurers denied coverage or became insolvent or had issued policies which failed to conform to the state's financial responsibility laws. These authorities, according to the court, led to the conclusion that a partially insured motorist could be treated as an uninsured motorist. Because only $2,500 and not $10,000 was available to Porter, the court held that recovery of the full statutory minimum was the protection which the insured expected and the Legislature intended.

We recognize that the opposite result would mean that the insured would be in a much better position had the tortfeasor been totally uninsured. However, we are not persuaded by the *Porter* court's rationale that this anomalous result is a sufficient reason to extend the plain meaning of the statute.

"A due regard for the differing functions of the legislative and judicial branches of government requires that the courts refrain from rewriting, under the pretext of interpretation, the clearly expressed language of a legislative enactment which the court deems to be preferable to that which the legislation requires." *Simonette v Great American Ins Co,* 165 Conn 466, 471; 338 A2d 453 (1973).

We refuse to read additional meaning into the unambiguous language of our statute absent any indication that the Legislature intended such a result.

At the time of plaintiff's accident MCL 500.3010; MSA 24.13010 read:

"No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto in limits for bodily injury or death set forth in section 504 of Act No. 300 of the Public Acts of 1949, as amended, being section 257.504 of the Compiled Laws of 1948, under provisions approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles, including owners or operators insured by an insolvent insurer, because of bodily injury, sickness or disease, including death, resulting therefrom, unless the named insured rejects such coverage in writing as provided herein. All such policies shall contain a notice, displayed prominently on the front page of the policy, in at least 8-point type that such protection coverage was explained to him and that he can reject such coverage by notice in writing. Unless the named insured requests such coverage in writing, it need not be provided in or supplemental to a renewal policy where the named insured has rejected the coverage in connection with a policy previously issued to him by the same insurer."

The plain meaning of "uninsured" is *not* insured. The only other situation in which the statute made uninsured motorist coverage available was when the tortfeasor's insurer was insolvent.

The Hunters were insured for the statutorily required amount. Their insurer was solvent and paid claims to the policy limit. The Hunters were not uninsured as the plain meaning of that term was used in the statute.

The statutorily required minimum limits for uninsured motorist coverage extant on the date of injury were "$10,000.00 because of bodily injury to

or death of 1 person in any one accident, and, subject to said limit for 1 person, to a limit of not less than $20,000.00 because of bodily injury to or death of 2 or more persons in any one accident".[5] This meaning is clear. The Legislature guaranteed a minimum level of coverage for each accident, not a minimum amount to be recovered by each injured person. The inclusion of the words "2 *or more* persons in any one accident" makes it obvious that the Legislature knew that a $20,000 per accident limit would not guarantee a $10,000 recovery to each injured person when more than 2 persons are injured.

We recognize, as plaintiff points out, that under our result she would have been in a better position had the Hunters carried no insurance. It is most unfortunate that the minimum limits then afforded under the policy in combination with the payments made to the other claimants failed to cover to any extent the damages awarded to plaintiff. However, the solution is not for this Court under the guise of interpretation to revise an unambiguous statute to reach what it may consider a just result. *Simonette, supra.* There is no ambiguity in the statute which would allow us to extend coverage to an individual injured in an accident caused by a motorist insured in the statutorily required amount because that amount proves to be inadequate. Nor is there any indication that the Legislature would have intended such a result.

The Legislature's intent, as we perceive it, was to protect the public from a noninsured, financially irresponsible motorist, not one who was insufficiently insured. See *Lund v Mission Ins Co,* 270 Or 461; 528 P2d 78 (1974). "The protection

[5] See fn 3.

intended is against an 'uninsured' motorist, not one who is 'underinsured'. The legislature required that a minimum level of coverage be available for each accident when more than one person was injured. It did not undertake to ·guarantee an irreducible minimum sum available to every injured person under every set of circumstances but simply to make available a *policy* offering minimum levels of coverage." *Gorton v Reliance Ins Co,* 77 NJ 563, 572; 391 A2d 1219 (1978).

Furthermore, the practical effect of the *Porter* position is troublesome for it effectively transforms uninsured motorist coverage into a policy of excess accident insurance. "That is not the coverage for which the insured paid a premium, nor would it conform to any rational public policy. We hesitate to contemplate what premiums insured motorists would have to pay for uninsured motorist coverage should this court declare that to be the proper interpretation of legislative intent." *Travelers Ins Co v Bouzer,* 39 Cal App 3d 992, 995; 114 Cal Rptr 651 (1974). See also *Gorton, supra.*[6]

Plaintiff also contends that a proper interpretation of her policy with State Farm supports her recovery. Her policy provided in pertinent part that a motor vehicle was uninsured if "there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies that there is coverage thereunder".[7] Plaintiff contends that be-

---

[6] See *Ziegelmayer v Allstate Ins Co,* 403 A2d 653, 655 (RI, 1979), and cases cited therein at fn 2.

[7] More fully, the uninsured motorist provision of plaintiff's policy provided:

"To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured motor vehicle".

An uninsured motor vehicle was defined as:

cause she received nothing from Auto-Owners, they denied coverage.

A denial of coverage within the insuring language of the State Farm policy would require that Auto-Owners had denied that it had a duty to indemnify the Hunters against damages arising out of the accident. This was never done. Rather, Auto-Owners acknowledged the liability of its insured and paid out claims to the policy limits which were the same as the minimum limits required by the Michigan financial responsibility law.

The proposition suggested by the plaintiff would lead to an untenable result. It would mean that whenever a liability insurance carrier had coverage inadequate to fully defray all claims and refused to pay more than the policy limits which met the statutorily required minimum limits, the uninsured motorist carrier would automatically become liable on the ground that the liability carrier had "denied coverage". Such an interpretation finds no support in the clear and unequivocal language of the parties' contract.[8]

The Hunters were insured with a policy which met the statutorily required minimum limits. Their solvent insurer admitted the Hunters' liability and paid claims to the policy limits. Without

"(1) a land motor vehicle with respect to the ownership, maintenance or use of which there is in at least the amounts specified by the financial responsibility law of the state in which the described motor vehicle is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such vehicle, or *with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies that there is any coverage thereunder* or is or becomes insolvent". (Emphasis added.)

[8] See *Hallowell v State Farm Mutual Automobile Ins Co,* 443 A2d 925 (Del, 1982); *Villarreal v Texas Farmers Ins Co,* 510 SW2d 633 (Tex Civ App, 1974); *Golphin v Home Indemnity Co,* 284 So 2d 442 (Fla App, 1973).

twisting the unambiguous language of the parties' contract, we cannot find that the Hunters were uninsured or that Auto-Owners denied coverage.

## CONCLUSION

To hold in favor of the plaintiff would require this Court to exercise powers which it does not possess, namely, to revise the statute and reconstruct the parties' contract.

Accordingly, we hold that a person may not collect benefits under his or her own uninsured motorist coverage when the tortfeasor's insurance coverage meets the statutorily required limits. Thus, employing the *Gavin/Standfest* standard of review, the instant arbitration award is upheld.

The decision of the Court of Appeals is affirmed on other grounds.

FITZGERALD, C.J., and WILLIAMS, COLEMAN, and RYAN, JJ., concurred.

LEVIN, J. *(dissenting)*. We would hold that a person who pays the additional premium to provide a fund to pay "damages for bodily injury caused by uninsured motor vehicles" (the bold face print), has provided a source of recovery, to the extent of the amount of the uninsured motor vehicle coverage ($20,000/$40,000), where the vehicle driven by the defendant held liable in damages is insured for liability but the amount of the insurance is exhausted by payment to other injured persons.

The Legislature, to be sure, has not required that automobiles be insured for public liability for more than $20,000/$40,000, and many drivers are underinsured. That but poses the problem pre-

sented in this lawsuit and cuts both ways on the issue under consideration—what did Ms. Lotoszinski rightfully think she was buying?

It makes little difference to Ms. Lotoszinski whether her inability to recover at least $20,000 of the $180,000 judgment is attributable to the offending vehicle being "uninsured" or (there being so many injured persons in such amounts that the policy limits have been exhausted) "underinsured". There being no insurance available to pay any part of the judgment Ms. Lotoszinski obtained, she understandably sees the vehicle as "uninsured".

A standard insurance policy is not an ordinary "contract".[1] Much like a manufactured product, it is produced by an industry, the insurance industry, and marketed for mass consumption. The insurer offers the policy on a take-it-or-leave-it basis. There are no negotiations concerning terms; a policy containing different or more favorable

[1] There is no meeting of the minds except regarding the broad outlines of the transaction, the insurer's desire to sell a policy and the insured's desire to buy a policy of insurance for a designated price and period of insurance to cover loss arising from particular perils (death, illness, fire, theft, auto accident, "comprehensive"). The details (definitions, exceptions, exclusions, conditions) are generally not discussed and rarely negotiated.

The policyholder can, of course, be said to have agreed to whatever the policy says—in that sense his mind met with that of the insurer. Such an analysis may not violate the letter of the concept that a written contract expresses the substance of a meeting of minds, but it does violate the spirit of that concept.

To be sure, contract law principles are not confined by the concept of a "meeting of the minds". Nevertheless, a point is reached when the label "contract" ceases to fully and accurately describe the relationship of the parties and the nature of the transaction between insurer and insured.

Just as a deed given as security is not only a conveyance, a document stating mutual agreements produced and marketed for mass consumption is not only a contract. It, like other products produced and marketed for mass consumption, must measure up to the standards which the law imposes as a safeguard against the failure of a product so produced and marketed to be reasonably fit for the purpose for which the product is produced, marketed, and acquired.

language is not obtainable. There is little or no language variation between the uninsured motorist clause offered by one insurer and another.[2]

A policy of insurance can be expected, like other products produced and marketed for mass consumption, to be free of substantial defect. An uninsured motorist clause which does not protect the policyholder, within the dollar amounts of policy limits, in the situation which gave rise to this litigation is, in our opinion, defective.

It is the historic responsibility of the courts to protect, in the exercise of the judicial power, against imposition in commercial transactions. Fairness is the proper inquiry where a court is assessing policy language marketed and purchased without negotiation or explanation of the scope of the coverage.[3] There is no suggestion that Ms. Lotoszinski was told that she would not be covered in this situation.

The governing rule of law cannot rightfully be predicated on the assumption that Ms. Lotoszinski would read the policy, that if she did read it she would or could understand its esoteric verbiage, anticipate the situation which developed and deduce that she was not covered.[4] Many competent lawyers would, unless they set aside time for

[2] See *DAIIE v Gavin* and *DAIIE v Standfest,* 416 Mich 407; 331 NW2d 418 (1982), decided today.

[3] See *Bradley v Mid-Century Ins Co,* 409 Mich 1, 61; 294 NW2d 141 (1980); *DiOrio v New Jersey Manufacturers Ins Co,* 63 NJ 597, 602; 311 A2d 378, 381 (1973); *C & J Fertilizer, Inc v Allied Mutual Ins Co,* 227 NW2d 169, 175 (Iowa, 1975); *Hionis v Northern Mutual Ins Co,* 230 Pa Super 511, 516-517; 327 A2d 363, 365 (1974); *Henningsen v Bloomfield Motors, Inc,* 32 NJ 358, 399-400; 161 A2d 69, 92 (1960); *Ady v West American Ins Co,* 69 Ohio St 2d 593, 597; 433 NE2d 547, 549 (1982).

See also Keeton, Insurance Law, § 63, pp 350-351; 2 Restatement Contracts, 2d, § 208; 1 Corbin, Contracts, § 128, p 554; Grismore, Contracts (Murray), § 294, p 508.

[4] *Ibid.*

careful reading and reflection, have failed that exam.

Insurance premiums were no doubt calculated on the basis of a literal reading of the policy language, and therefore the construction of the policy we advocate would cause insurers unanticipated loss. But if the insurer had paused for just a moment and thought objectively of the matter from the standpoint of a person who buys uninsured motorist coverage, it should have been able to see the unfairness of failing to provide coverage for the serious injury case where there are multiple claimants.

KAVANAGH, J., concurred with LEVIN, J.

RILEY, J., took no part in the decision of this case.