541 So.2d 436 (1989)
Jan COSSITT
v.
FEDERATED GUARANTY MUTUAL INSURANCE COMPANY.
No. 58276.
Supreme Court of Mississippi.
March 1, 1989.
*437 Charles R. Wilbanks, Sr., Wilbanks Law Firm, Corinth, for appellant.
Bill Patterson, McCoy, Wilkins, Noblin & Stephens, Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and SULLIVAN, JJ.
SULLIVAN, Justice, for the court:
Federated Guaranty Mutual Insurance Company ("Federated Guaranty") filed a complaint on February 4, 1986, pursuant to Miss.R.Civ.P. 57, seeking a declaration of rights under a contract of insurance with Jan Cossitt. The parties later filed motions  Jan Cossitt for Partial Summary Judgment on January 2, 1987, accompanied by a Motion to Compel Discovery, and Federated Guaranty for Summary Judgment on March 4, 1987.
On March 20, 1987, the respective Motions for Summary Judgment were heard in the Hinds County Circuit Court, First Judicial District, and an order was issued on March 23, 1987, denying summary judgment as to Jan Cossitt and granting summary judgment as to Federated Guaranty.
*438 Jan Cossitt has appealed the denial of her motion and the corresponding grant of Federated Guaranty's motion, and has raised the following issues:
1. There is no credit or setoff due appellee as to the uninsured motorist coverage, since the appellant has received nothing from the tortfeasor;
2. Tortfeasor's vehicle was uninsured according to case law which has interpreted the uninsured motorist statute;
3. Appellant was entitled to medical benefits under the policy of insurance;
4. An issue of fact has arisen as to bad faith of the appellee and punitive damages for consideration by the jury; and
5. The court erred in ignoring the appellant's motion to compel discovery.
This case is based on unfortunate but undisputed facts. On April 10, 1984, Jan Cossitt, Odom McDaniel and Joseph Q. White were struck by a vehicle owned and operated by Lester Davis. Mr. McDaniel was killed, and both Mr. White and Jan Cossitt sustained serious injury. At the time of the accident, Mr. Davis had in effect a policy of insurance with a limit of bodily injury liability in the amount of $10,000.00 per individual, and $20,000.00 per accident.
The estate of Mr. McDaniel and Mr. White filed suit against Mr. Davis in Hinds County Circuit Court. However, Jan Cossitt did not file suit. The suits brought by Mr. McDaniel's estate and Mr. White were subsequently settled, with Mr. Davis' liability insurance carrier paying $10,000.00 to each party. These payments totally exhausted the available liability coverage under Mr. Davis' policy of insurance, and as a consequence, Jan Cossitt has received nothing from Mr. Davis' carrier.
Because there are no proceeds left under Davis' liability policy with which to pay Jan Cossitt, she claims that Davis is an uninsured motorist as to her so that Federated Guaranty has become obligated to her under her own policy of insurance which provides for uninsured motorist protection. The uninsured motorist portion of her policy provides for bodily injury coverage in the amount of $10,000.00 per person, and $20,000.00 per accident. Federated Guaranty contends that Davis is an insured motorist because he had limits of bodily injury liability (10/20) in an amount equal to Cossitt's uninsured motorist coverage (10/20), relying on the statutory definition of uninsured motorist in Mississippi Code Annotated, § 83-11-103 (Supp. 1988). It is this dispute that prompted Federated Guaranty to seek a declaratory judgment.
By way of counterclaim, Cossitt sought payment of medical expenses under her policy. In addition, she sought punitive damages because of Federated Guaranty's alleged bad faith in refusing to pay the uninsured motorist coverage, and in failing to pay the total amount of medical expenses incurred. Federated Guaranty continues to assert that an arguable and legitimate dispute existed over the amount due Cossitt under her policy of insurance, and consequently, there could be no bad faith on its part.
In her Motion for Partial Summary Judgment, Cossitt sought summary judgment on all issues except the issue of bad faith, which she sought to have submitted to a jury. Federated Guaranty sought summary judgment on the issue of bad faith, as well as on the issue of whether Davis was an insured or uninsured motorist at the time of the accident.
The lower court denied Cossitt's Motion for Partial Summary Judgment. It granted the motion of Federated Guaranty, and found that Federated Guaranty was entitled to judgment as a matter of law that its actions in handling Cossitt's claim for both medical and uninsured motorist coverage evidenced no acts of bad faith. Furthermore, Federated Guaranty was entitled to judgment as a matter of law that Lester Davis ("tortfeasor") was not an uninsured motorist within the meaning of Mississippi Code Annotated, § 83-11-103 (Supp. 1988), and therefore, Cossitt was not entitled to recover under the uninsured motorist portion of her policy.
This appeal is from the denial and corresponding grant of Motions for Summary Judgment. This Court proceeds de novo, *439 reviewing the evidentiary matter before it in the light most favorable to the non-movant. If this view reveals that the moving party is entitled to judgment as a matter of law because there is no genuine issue of material fact, then summary judgment should be entered in favor of the movant; otherwise, the motion should be denied. Short v. Columbus Rubber & Gasket Co., Inc., 535 So.2d 61, 63-4 (Miss. 1988); Smith v. Sanders, 485 So.2d 1051, 1054 (Miss. 1986); Miss.R.Civ.P. 56.

I.

WAS THE TORTFEASOR'S VEHICLE AN "UNINSURED MOTOR VEHICLE" WITHIN THE MEANING OF MISSISSIPPI CODE ANNOTATED, § 83-11-103 (SUPP. 1988)?
At the outset, it is clear that no genuine issue of material fact exists with respect to this issue. The only question is one of law involving an analysis of case law and interpretation of the applicable statute. Our only question is whether the lower court reached the correct conclusion of law.
As previously stated, the tortfeasor had in effect at the time of the accident bodily injury liability coverage in the amount of $10,000.00 per individual and $20,000.00 per accident. Furthermore, Jan Cossitt had in effect uninsured motorist coverage for bodily injury in the amount of $10,000.00 per individual and $20,000.00 per accident. Two persons injured in the accident with Cossitt collected $10,000.00 each from the tortfeasor's insurance carrier, thereby exhausting the applicable bodily injury liability coverage of $20,000.00 per accident, and leaving no proceeds available to pay Cossitt.
The question here is whether the tortfeasor becomes an uninsured motorist, so that Cossitt's uninsured motorist coverage will apply, where multiple claimants under the tortfeasor's liability policy, other than Cossitt, have totally exhausted the available proceeds. This issue would also encompass situations where multiple claimants have reduced the tortfeasor's liability limit so that the injured person (Cossitt, e.g.) would receive less than the minimum amount of their uninsured motorist coverage.
Cossitt sustained in excess of $10,000.00 in bodily injury damage. Because of recovery by the prior claimants, she received nothing from the tortfeasor's liability insurance policy. Cossitt argues, therefore, that as to her, the tortfeasor is an uninsured motorist which would entitle her to collect the $10,000.00 provided for under her own policy with Federated Guaranty.[1] Cossitt's focus in determining whether the tortfeasor is uninsured is on the amount of proceeds available to the injured person.
Federated Guaranty, on the other hand, contends that the statute mandates a focus on the applicable limits of the respective policies, and not on the proceeds available to each injured person. Under this view, the tortfeasor is neither uninsured nor underinsured where the liability limit in his policy is equal to or greater than the limit provided for in the injured claimant's uninsured motorist coverage. All things being equal in this case (tortfeasor's 10/20 liability limit equals claimant's 10/20 uninsured motorist limit), Davis was not uninsured as to Cossitt.
In order for Cossitt to recover under her policy, the tortfeasor's automobile "must be `an uninsured motor vehicle' as defined in the statute." Wickline v. U.S. Fidelity & Guaranty Co., 530 So.2d 708, 712 (Miss. 1988). We begin with the applicable statute,[2] Mississippi Code Annotated, § 83-11-103(c)(iii) (Supp. 1988), which provides that an "uninsured motor vehicle" is
an insured motor vehicle, when the liability insurer of such vehicle has provided limits of bodily injury liability for its *440 insured which are less than the limits applicable to the injured person provided under his uninsured motorist coverage; (Emphasis added).
Instantly, it can be seen that the focus in determining whether the tortfeasor is uninsured is on the respective "limits" of the policies. "Mississippi law defines an [un]insured vehicle in terms of policy limits, as distinguished from proceeds actually received by a particular claimant," and furthermore, "the amount of the claimant's damages is also irrelevant when determining eligibility for uninsured motorists benefits." Wilson v. Nationwide Mutual Ins. Co., 667 F. Supp. 349, 355 (N.D.Miss. 1987); Herrod v. National Indemnity Co., 643 F. Supp. 956, 959 (N.D.Miss. 1986); Wickline v. U.S. Fidelity & Guaranty Co., 530 So.2d 708, 712-13 (Miss. 1988). Once focused, it appears clear under the statutory definition that the tortfeasor in this case is not uninsured as to Cossitt since the limit of liability provided by his insurer is not less than the limit provided by Cossitt's own uninsured motorist coverage. Section 83-11-103(c) simply does not define "uninsured motor vehicle" to include the factual scenario present in this case.
Of course, we have stated on more than one occasion that the uninsured motorist statute is to be liberally construed in favor of the injured person, to the end that uninsured motorist insurance will accomplish its designed purpose of providing "a means of compensation for injuries" received at the hands of an uninsured motorist. Wickline, 530 So.2d at 711, and cases cited therein. Further, this Court has never expressly answered the question presented here. In answering the question, we must not forget that "a statute which enumerates and specifies the subjects or things upon which it is to operate, is to be construed as excluding from its effect those subjects not expressly mentioned or included ...", and the "historical reason for the adoption of uninsured motorist insurance by this and other states does not supersede the legislative enactment." State Farm Mutual Auto. Ins. Co. v. Daughdrill, 474 So.2d 1048, 1051-52 (Miss. 1985). We must be careful not to rewrite the statutory definition of "uninsured motor vehicle" to include situations not expressly provided for or contemplated under the guise of liberally construing the statute in order to accomplish its designed purpose.
Without doubt, the Mississippi Uninsured Motorist Act provides that the tortfeasor in this case is neither uninsured nor underinsured as to Jan Cossitt. Admittedly, such a conclusion creates an unfortunate and anomalous result, i.e., Jan Cossitt would be better off had she been injured by a tortfeasor who had no insurance at all because in that situation she could receive the full amount of her uninsured motorist coverage. Under the conclusion we reach, she receives nothing from her uninsured coverage because she was injured by a tortfeasor who had limits of bodily injury liability in an amount equal to her uninsured coverage, and further, she receives nothing from the tortfeasor's liability coverage because multiple claimants have totally exhausted the available proceeds. But the law is full of anomalies, and we are better off with an anomalous result than with judicially rewriting the statute in order to cure the anomaly.
There are compelling reasons for the conclusion we reach. First, every policy of automobile liability insurance is required, unless rejected, to include uninsured motor vehicle coverage "within limits which shall be no less than those set forth in the Mississippi Motor Vehicle Safety Responsibility Law." Mississippi Code Annotated, § 83-11-101 (Supp. 1988). At first blush, it might appear that the policy of the Uninsured Motorist Act is to assure each injured party the availability of at least the minimum amount provided by the Mississippi Motor Vehicle Safety Responsibility Law. However, a closer inspection proves such a policy unintended, and inconsistent with the uninsured motorist provisions of the Motor Vehicle Safety Responsibility Law.
The applicable section of the Motor Vehicle Safety Responsibility Law referred to in Section 83-11-101 provides as follows:

*441 (2) Such owner's policy of liability insurance:
(b) shall pay on behalf of the insured named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, all sums which the insured shall become legally obligated to pay as damages arising out of the ownership, maintenance or use of such motor vehicle or motor vehicles within the United States of America or the Dominion of Canada, subject to limits exclusive of interest and costs, with respect to each such motor vehicle, as follows: ten thousand dollars ($10,000.00) because of bodily injury to or death of one (1) person in any one (1) accident and, subject to said limit for one (1) person, twenty thousand ($20,000.00) because of bodily injury to or death of two (2) or more persons in any one (1) accident, and five thousand dollars ($5,000.00) because of injury to or destruction of property of others in any one (1) accident. (Emphasis added).
Mississippi Code Annotated, Section 63-15-43(2)(b) (Supp. 1988); see also, Sections 63-15-3(j), 63-15-11(4), 63-15-31. Thus, this statute sets the minimum amount of uninsured motorist coverage which every automobile liability policy must include, unless rejected by the insured.
In the words of the Alabama Supreme Court, which addressed the identical argument based on an analogous statute:
The statute mandates a minimum of $10,000 coverage only in the case of accidents resulting in bodily injury to or the death of one person. Where an accident results in bodily injury to or the death of two or more persons, the statute mandates a minimum coverage of $20,000 for the accident. The statute clearly contemplates situations in which the recovery of each individual might be less than $10,000. It appears, therefore, that the policy behind the statute is to assure the availability of minimum coverage for each accident, not for each injured person. The minimum which the legislature intended to make available was available in the present case under [Davis'] liability policy. For this reason we cannot hold that he was an "uninsured motorist." (Emphasis added).
Criterion Insurance Co. v. Anderson, 347 So.2d 384, 386 (Ala. 1977).
More specifically, the statute "clearly contemplates situations in which the recovery" of an injured individual might be zero. See Blackburn v. State Farm Mutual Auto. Ins. Co., 108 Idaho 85, 88, 697 P.2d 425, 428 (1985) ("anomaly which is present in cases such as this is a result of the unfortunate legislative policy of tieing the uninsured motorist statute directly to the financial responsibility law, which provides for a "per accident" limit."); Lotoszinski v. State Farm Mutual Auto. Ins. Co., 417 Mich. 1, 331 N.W.2d 467 (1982) (finding under analogous statute that minimum limit of liability is per accident, not person); Ziegelmayer v. Allstate Ins. Co., 121 R.I. 818, 403 A.2d 653 (1979) (finding under analogous statute that minimum statutory liability is per accident, not per person); Tucker v. Peerless Ins. Co., 41 N.C. App. 302, 254 S.E.2d 656 (1979) (analogous provision of North Carolina Financial Responsibility Law expressly contemplated multiple claimants by providing a minimum amount of coverage for injury to "two or more" persons in one accident); Chafin v. Aetna Ins. Co., 550 F.2d 575 (10th Cir.1976) (applying New Mexico law to similar statute, intent was to insure that a statutory minimum amount of liability insurance would be available for each accident as opposed to each person).
Secondly, courts have recognized that it would not advance any public policy to judicially allow recovery per person in a multi-claimant situation such as the one at bar. A rule allowing recovery in such a situation would convert uninsured motorist coverage into a policy of excess accident insurance which would be "open ended," at least to the limits of the uninsured motorist coverage. Furthermore, it would likely raise the price of uninsured motorist coverage. Travelers Ins. Co. v. Bouzer, 39 Cal. App.3d 992, 114 Cal. Rptr. 651, 652-53 (1974); see also, Lotoszinski, supra; Gorton v. Reliance Ins. Co., 77 N.J. 563, 391 *442 A.2d 1219, 1225 (1978) (allowing injured party to recover up to minimum requirements of Financial Responsibility Law, less what tortfeasor has paid, would convert uninsured motorists coverage into a policy of excess accident coverage).
Thirdly, the legislature of this State gave all motorists the option to purchase protection for themselves against tortfeasors carrying insurance which is legally sufficient but, inadequate to compensate all damages to an injured person such as Jan Cossitt. This was done by amendment to Section 83-11-103 to incorporate the "underinsured" concept. Wickline, 530 So.2d at 712-13.
Therefore, Jan Cossitt, like all other similarly situated motorists, could have contracted with her carrier for excess coverage beyond the statutory minimum, thereby rendering the tortfeasor Davis underinsured per Section 83-11-103(c)(iii). That the Uninsured Motorist Act provides this option leads us to conclude that uninsured motorist coverage was not intended to apply in situations like the one at bar. See Diluzio v. Home Mutual Ins. Co., 289 N.W.2d 749 (Minn. 1980) (claimant chose not to purchase underinsured motorist coverage, and therefore, the court would not distort the meaning of "uninsured" to apply in situations where the tortfeasor's proceeds were exhausted). Simply, any motorist has the option of purchasing excess insurance, but we are not at liberty to judicially convert Cossitt's uninsured motorist coverage into a policy of open ended, excess accident insurance.
Some states have appropriately handled this problem by amending the applicable statutes to include in the definition of uninsured (or under-insured) motorist one whose limits of liability coverage is less than the limits of the uninsured motorist coverage applicable to the injured person because of payments made to claimants injured in the same accident. See e.g., Tex. Ins. Code Ann., Art. 5.06-1(2)(b) (Vernon 1981); Infante v. Texas Farmers Ins. Co., 640 S.W.2d 321 (Tex. App. 9 Dist. 1982); Ga. Code Ann., § 56.407.1(b)(1)(D)(ii) (1988); S.C. Code Ann., § 38-77-30(14)(b) (Law.Co-op.Supp. 1987); Colorado Rev. Statutes, § 10-4-609(4)(b) (1987); Alaska Statutes, § 28.20.445(h)(2) (1988).
Mississippi has not chosen to do so. Our statute defines uninsured automobile to include five situations, none of which apply here. (§ 103(c)(iii) includes the concept of an underinsured motor vehicle as well). Consequently, the fourth reason compelling denial of coverage to Jan Cossitt is the due regard which we must have for the differing functions of the legislative and judicial branches of government. Such due regard prevents us from rewriting the statutes to reach a more preferable result under the pretext of interpretation. Recognition of this fundamental rule is so universal that citation to authority is not necessary.
Fifth, we presume that the legislature contemplated this anomalous result by providing the definition of "uninsured motor vehicle" in Section 83-11-103(c)(ii). That definition of "uninsured motor vehicle" covers situations where there would be liability insurance in existence, but no proceeds to pay the claimant because of either a legal denial by the liability carrier, or because of the liability carrier's insolvency. That situation is the functional equivalent of the anomaly present in the case at bar; that is, there is legally sufficient insurance in existence, but no proceeds available to the claimant. That the legislature has provided for a different result in that circumstance by including the denial/insolvency scenario in the definition of uninsured motor vehicle leads us to conclude that the legislature clearly took the opportunity to consider the anomaly that can result in cases where legally sufficient insurance exists, but inadequate, if any, proceeds are available for a particular claimant. Further, that the legislature chose to remedy only one of the anomalies does not justify our judicially remedying the other. See Blackburn v. State Farm Mut. Auto. Ins. Co., supra.
In sum, a host of courts have considered this problem, and for several but similar reasons, an overwhelming majority have rejected the rationale put forth by Jan Cossitt. *443 Blackburn, 108 Idaho at 88, 697 P.2d at 428, and cases cited therein.
In conclusion, we hold "that there is no room for construing the statute to mean that an insured motorist is insured as to one claimant but ephemerally uninsured when the insurance coverage is exhausted." Strunk v. State Farm Mutual Auto. Ins. Co., 90 Wash.2d 210, 580 P.2d 622, 623 (1978). The tortfeasor in the present case, Davis, was unquestionably "underinsured in [his] ability to respond to all of the horrendous damage caused but [he] was not uninsured" within the meaning of "uninsured motor vehicle" as extensively defined by our legislature in Section 83-11-103(c). There are ways to remedy this anomaly, among them amendments to the Motor Vehicle Safety Responsibility Law which increases the statutory minimum amount of liability insurance to be available, amending the Motor Vehicle Safety Responsibility Law to provide liability insurance on a per person as opposed to per accident basis, and/or an amendment to the Uninsured Motorist Act to include in the definition of uninsured or underinsured motor vehicles the factual scenario at issue; but, we express no preference because all are solutions for the legislature, not this Court. Thus, the lower court did not err in holding that Federated Guaranty is entitled to a judgment as a matter of law that Jan Cossitt is not entitled to recover under the uninsured motorists portion of her policy.

II.

WAS COSSITT ENTITLED TO HAVE THE ISSUE OF BAD FAITH AND PUNITIVE DAMAGES SUBMITTED TO THE JURY FOR THEIR CONSIDERATION?
This Court has stated that the trial court must determine first, as a matter of law, whether the issue of punitive damages on account of alleged bad faith should be submitted to a jury. Pioneer Life Ins. Co. of Illinois v. Moss, 513 So.2d 927, 929 (Miss. 1987).[3] "If an insurance company has a legitimate or arguable reason for denying a claim, then such will utterly preclude the submission of the issue of punitive damages to the jury." Id. at 930 (Emphasis in original). But Pioneer cautioned that the absence of such a reason "does not automatically" send the issue to the jury. Id. Instead, in the absence of legitimate or arguable reasons, the trial court must find that the insurer "committed a willful or malicious wrong, or acted with gross or reckless disregard for the insured's rights." Id. In the procedural context of this case, proceeding de novo, we review the evidentiary matter and ask whether any genuine issue of material fact exists with respect to the allegations of bad faith so as to deny the insurer judgment in its favor as a matter of law.
The preceding discussion in Part I demonstrates without doubt that Federated Guaranty had a legitimate and arguable basis in law for denying Cossitt's uninsured motorist claim, regardless of whether we hold that Federated Guaranty is liable or not to pay the amount of uninsured motorist coverage. The existence of such an arguable basis in law "utterly preclude[s] the submission of the issue of punitive damages to the jury," and therefore, the lower court was correct in granting to Federated Guaranty judgment as a matter of law on this aspect of Cossitt's bad faith claim. Pioneer Life Ins. Co. of Illinois v. Moss, 513 So.2d 927, 930 (Miss. 1987); State Farm Fire & Cas. Co. v. Simpson, 477 So.2d 242, 252 (Miss. 1985). Alternatively, Cossitt asserts that Federated Guaranty's conduct in "refusing" to pay at least the $1,000.00 in medical coverage it admitted owing created a sufficient factual issue of bad faith and punitive damages which Cossitt was entitled to have submitted to a jury. Cossitt contends that Federated Guaranty refused to make the medical payments it admitted owing because it wanted to force Cossitt into a position of compromise *444 via forced litigation. In sum, Cossitt appears to be alleging an intentional refusal by Federated Guaranty to pay a legitimate and undisputed claim.
The failure of Federated Guaranty to make any medical payments to Cossitt is a result of the following post-accident developments:
(1) Jan Cossitt filed a notice of loss which was reported to the office of Federated Guaranty's District Claims Manager on May 2, 1984;
(2) The claim was assigned to Ramsey Claim Service in Clinton, Mississippi, on May 4, 1984;
(3) Following assignment to Ramsey, Ramsey took a statement from Cossitt on May 24, 1984, per the request of Federated Guaranty's District Claims Manager. This statement revealed that Cossitt's medical expenses would almost assuredly exceed $10,000.00;
(4) Following this statement, Ramsey Claim Service wrote the District Claims Manager requesting advice on Cossitt's available coverage;
(5) On June 12, 1984, the District Claims Manager advised Ramsey that Cossitt had $1,000.00 in medical coverage under the policy;
(6) A declaration sheet for Cossitt covering the period from June to September, 1984, was mailed to Ms. Cossitt;
(7) On July 10, 1984, the District Claims Manager advised Ramsey to secure proof of loss from Cossitt and pay her what is owed, assuming she had not settled with the insured;
(8) The District Claims Manager received a letter from Cossitt's attorney on July 26, 1984, requesting more information on the medical coverage available to Cossitt under her policy of insurance. This inquiry concerned dispute over three areas of Cossitt's policy, one indicating a $1,000.00 medical limit, one indicating a $5,000.00 medical limit, and one indicating that payment would be made for all expenses incurred within one year;
(9) Ramsey again wrote the District Claims Manager in regard to the confusion over the various coverages alluded to by Cossitt's attorney;
(10) The District Claims Manager advised Ramsey on August 6, 1984, that Cossitt was entitled to $1,000.00 in medical benefits;
(11) The District Claims Manager received a letter from Ramsey on August 9, 1984, advising that Cossitt's attorney had been informed of the availability of $1,000.00 in medical benefits, and that Ramsey was closing its file. The District Claims Manager kept his file open awaiting submission of medical bills from Cossitt;
(12) Cossitt's attorney wrote Ramsey Claim Service on April 5, 1985, again requesting clarification of medical coverage;
(13) On April 11, 1985, Ramsey wrote to the District Claims Manager concerning the continued confusion over the amount of medical coverage under Cossitt's policy;
(14) The District Claims Manager sent a copy of the declaration sheet on Cossitt's policy to Ramsey on April 16, 1985;
(15) As of October 1, 1985, Cossitt still had not provided any proof of loss by way of medical bills or reports;
(16) The District Claims Manager wrote Ramsey on October 8, 1985, informing Ramsey that Federated Guaranty would pay $1,000.00 in medical benefits upon submission of appropriate proof of loss;
(17) The District Claims Manager wrote Cossitt's attorney on either October 12, 1985, or October 18, 1985, to advise him that Federated Guaranty would pay $1,000.00 in medical benefits if Cossitt would furnish proper evidence of proof of loss;
(18) Cossitt's attorney wrote the District Claims Manager on October 29, 1985, again disputing the $1,000.00 medical benefit limit;
(19) Cossitt sent all medical bills to the District Claims Manager for Federated Guaranty on November 1, 1985;
(20) Cossitt's file was transferred to Harold Cain on January 3, 1986;
*445 (21) On February 4, 1986, Federated Guaranty filed for declaratory judgment on the issue of uninsured motorist coverage, while the medical benefits remained unpaid;
Up to November 1, 1985, when Cossitt supplied proof of loss, there is no genuine issue of material fact as to the allegations of bad faith refusal to make medical payments. Consequently, Federated Guaranty was correctly awarded judgment as a matter of law that it evidenced no acts of bad faith. The policy made submission of proof of loss a condition precedent to payment of medical benefits, and this Court has recognized that, in the absence of waiver, punitive damages are not recoverable for failing to make medical payments where the insured failed to furnish the required medical reports and authorizations. New Hampshire Ins. Co. v. Smith, 357 So.2d 119, 121 (Miss. 1978).
Federated Guaranty admits in its brief, however, that the condition precedent to its obligation to pay was satisfied on November 1, 1985, when Cossitt submitted the proper medical bills and reports. Its failure to make payment since renders our inquiry a bit more problematic. Federated Guaranty argues that it has always been willing to pay $1,000.00, but Cossitt has yet to give any indication whether it would accept the payment of $1,000.00 in full or partial satisfaction of Federated Guaranty's obligation. It seems, however, that having admitted owing at least $1,000, it would not devolve upon Cossitt to extend an all or nothing acceptance. Federated Guaranty became duty bound, by its own admission, to pay at least $1,000 on November 1, 1985, when Cossitt submitted proof of loss. At a minimum, Federated Guaranty should have paid the $1,000 it admitted owing into the treasury of the court, and leave to the court the question of whether this payment constitutes full or partial satisfaction of its obligation to Cossitt.
On this record, we simply cannot tell whether any genuine issue of material fact exists with regard to Federated Guaranty's alleged bad faith in failing to make at least $1,000 in medical benefit payments to Cossitt. Short of holding that a jury issue has been created, we remand to the trial court for the limited purpose of allowing the additional development of facts surrounding Federated Guaranty's failure to pay medical benefits to Cossitt following November 1, 1985. It may develop on remand that Federated Guaranty is indeed entitled to a summary judgment on this limited issue, or that a jury question is presented. On these questions we express no opinion; we only hold that the evidentiary matter before us is insufficient to justify summary judgment in favor of Federated Guaranty as to its alleged bad faith in refusing to make medical payments to Cossitt following her submission of proof of loss on November 1, 1985.
Therefore, the lower court correctly granted summary judgment for Federated Guaranty on the issue of bad faith refusal to pay uninsured motorist benefits, and medical benefits prior to November 1, 1985. However, a further development of the facts is necessary before the question of bad faith refusal to pay medical benefits after November 1, 1985, can be answered.

III.

IS FEDERATED GUARANTY DUE ANY CREDIT OR SETOFF AGAINST ITS UNINSURED COVERAGE?
Early on, in its complaint for declaratory judgment, Federated Guaranty asks that it be allowed to offset payments from the tortfeasor's liability carrier to Cossitt in the event it became obligated under the uninsured motorist portion of Cossitt's policy. In other words, Federated Guaranty contended that any payments it may owe Cossitt under the uninsured motorist portion of her policy should be reduced by any payments made to Cossitt by the tortfeasor's liability carrier.
The issue has long since become moot. Subsequent developments have shown that Cossitt has not received, nor will she receive, any payment from the tortfeasor's liability carrier because the available proceeds have been exhausted. Thus, there is nothing to apply in credit or offset, nor will *446 there be. Further, a determination that Federated Guaranty is not obligated to pay under the uninsured motorist portion of Cossitt's policy moots the point as well. As a consequence, this issue is not properly before the court. Miss. Ass'n. of Educators v. Trustees JMSSD, 510 So.2d 123, 125-26 (Miss. 1987).

IV.

IS COSSITT ENTITLED TO MEDICAL BENEFITS UNDER HER POLICY OF INSURANCE?
Cossitt's argument here is really over the amount of benefits due, not the fact of benefits being due. However, there is absolutely nothing in the record to indicate that this point was raised, developed or decided by the lower court on summary judgment. The lower court ruled on two questions  whether the tortfeasor was an insured, and whether Federated Guaranty acted in bad faith in failing to make uninsured motorists and medical benefit payments. Further, all of the evidence developed in the lower court concerned these two issues.
Whatever the reason, there is no record for appeal concerning the issue of the amount of medical payments actually owed under the Cossitt policy. It is an elementary and familiar rule that we sit to review actions of the lower courts, and we will not undertake to consider matters which do not appear of record in the lower court, absent unusual circumstances. Educational Placement Services v. Wilson, 487 So.2d 1316, 1320 (Miss. 1986). Consequently, this issue is not properly before this Court.

V.

DID THE COURT ERR IN IGNORING COSSITT'S MOTION TO COMPEL DISCOVERY?
Cossitt's attorney filed a Motion to Compel Discovery on January 2, 1987, and noticed the motion for hearing on March 13, 1987. As indicated by the record, however, and confirmed by affidavit of the presiding trial judge, the lower court heard the parties' respective motions for summary judgment, but the Motion to Compel was not carried forward and argued by Cossitt's counsel.
Again, it is a familiar and recognized rule that a trial judge is not to be charged with knowledge of every paper filed with the court clerk. It is not the duty of the judge to search out and bring up such matters, but the affirmative duty rests upon the party filing the motion to follow up his action by bringing it to the attention of the trial court. Dyer v. State, 300 So.2d 788, 789 (Miss. 1974). Therefore, Cossitt's Motion to Compel is not properly before this Court, for a trial judge will not be put in error on a matter which was not presented to him for decision. R & S Development, Inc. v. Wilson, 534 So.2d 1008, 1012 (Miss. 1988); Warren v. State, 456 So.2d 735, 738 (Miss. 1984).
The judgment of the lower court granting summary judgment in favor of Federated Guaranty is affirmed as to all issues except Federated Guaranty's failure to make medical benefit payments after the condition precedent to its duty to pay was performed on November 1, 1985. As to this issue, we reverse and remand to allow for a more complete development of facts surrounding Federated Guaranty's failure to pay at least $1,000 in medical benefits.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, ANDERSON and PITTMAN, JJ., concur.
BLASS, J., not participating.
NOTES
[1] If she had collected some amount less than $10,000.00, the argument would be that the tortfeasor is underinsured as to her, and she could collect the difference between what she received from the tortfeasor and the limit of her uninsured coverage.
[2] None of the other four definitions in Section 83-11-103(c) are applicable. If Davis is uninsured, he must be so under 103(c)(iii). None of the policy definitions are applicable either.
[3] Pioneer Life occupied a procedurally different posture than the present case in that the question of law for the trial court came at the conclusion of the evidence at trial; however, we perceive no qualitative difference mandating a different inquiry by the trial court in the context of summary judgment.