This appeal arises from a May 30, 1990, order of the Circuit Court of Pontotoc County, in favor of the Appellees, Pakita and Randy Payne, claimants on an uninsured motorist policy, denying Atlanta Casualty Company's motion for summary judgment. We affirm on the issue that a Named Driver Exclusion endorsement, which specifically provides for the written rejection of Uninsured Motorist benefits, violates the Mississippi Uninsured Motorist Act so as to render the exclusion invalid.
 FACTS
On September 20, 1988, Pakita Payne, Randy Payne and Dustin Payne were injured in a collision proximately caused by the negligence of an uninsured motorist, Bill Thompson. At the time of the accident, Randy was driving while Pakita held the couple's six-week-old infant and graded her students' papers. The record indicates that Randy may have been contributorily negligent, but Atlanta Casualty did not raise this as a defense.
The automobile was demolished, receiving damages in the amount of $8,395.00. Pakita was hospitalized for three days with head and facial lacerations as well as a broken arm which required surgery. Randy likewise required surgery to repair severed tendons in his elbow. He was unable to work for five weeks. The infant received only a minor bump on his head. Both Randy and Pakita were enrolled in Blue Cross/Blue Shield group health plans, which, at the time depositions were taken, had paid Pakita's medical expenses but had not yet paid Randy's.
Unlike a good neighbor, Atlanta Casualty refused to pay the claims submitted by the Paynes under the uninsured motorist policy for property damage, personal injuries and medical expenses. The insurer asserted that Pakita's automobile insurance policy with them contained a named driver exclusion, which both she and her husband, Randy, had signed, and denied any coverage under the policy should an accident occur while Randy was driving Pakita's car.
When Pakita Payne purchased her new 1988 Oldsmobile Cutlass Calais in October, 1987, she obtained liability and uninsured motorist coverage with the Mississippi *Page 345 
Farm Bureau Insurance Company. After she married Randy in February, 1988, that policy was cancelled when the company's routine license check revealed that he had a poor driving record and his license had been suspended.
After receiving the cancellation notice, Pakita contacted her insurance agent, Wanda Self. She completed an application for a policy with the Atlanta Casualty Company for liability and uninsured motorist coverage. There was, however, a caveat. Because Randy's license was suspended, Pakita could not obtain affordable coverage for her car without a Named Driver Exclusion endorsement, which precluded her from recovering damages under the policy in the event an accident occurred while Randy was driving the car. Randy and Pakita both talked to the agent and signed the endorsement as required by Atlanta Casualty, which reads in part as follows:
 The undersigned, being the named insured in this policy, hereby consents and agrees to the exclusion set forth above and also rejects in writing all uninsured motorist coverage if the vehicle is being operated by the excluded driver in this policy.
Several days after the accident, the Payne's attorney contacted the agent to ascertain whether they had uninsured motorist coverage and what procedures were required to file a claim. Mrs. Self completed accident and loss report forms and took them to Pakita for her signature on September 28, 1988. Atlanta Casualty then filed a Complaint for Declaratory Judgment, asserting that they were not liable for payment because of the Named Driver Exclusion.
Finding that the exclusion was "improper and unlawful under the Act," the Circuit Court granted the Payne's motion for summary judgment with respect to the claims for uninsured drivers' benefits for the property damage to Pakita's car and for the personal injuries suffered by the Paynes and their infant son, Dustin.
 I.
The Mississippi Uninsured Motorists Act, Miss. Code Ann. §83-11-101(1) et seq. (Supp. 1990) provides that:
 No automobile liability insurance policy or contract shall be delivered after January 1, 1967, unless it contains an endorsement or provisions undertaking to pay the insured all sums which he shall be entitled to recover as damages for bodily injury or death from the owner or operator of an uninsured motor vehicle, within limits which shall be no less than those set forth in the Mississippi Motor Vehicle Safety Responsibility Law, as amended, under provisions approved by the commissioner of insurance;
Provision likewise is made under Miss. Code Ann. § 83-11-101(2) for property damage caused by the operator or owner of an uninsured vehicle. Rejection of coverage under both subsections must be in writing pursuant to Miss. Code Ann. § 83-11-101(1) and (2) (Supp. 1990).
The intent of the Act is to "provide protection to innocent insured motorists and passengers injured as a result of the negligence of financially irresponsible drivers." Rampy v. StateFarm Mutual Automobile Insurance Co., 278 So.2d 428, 432 (Miss. 1973). Its purpose is "to provide the same protection to one injured by an uninsured motorist as that individual would have if injured by a financially responsible driver." Lawler v.Government Employees Insurance Co. 569 So.2d 1151, 1153 (Miss. 1990). "The statute is to be liberally construed so as to achieve compensation." Harris v. Magee, 573 So.2d 646, 654 (Miss. 1990).
This Court has developed three basic rules of construction to be used when analyzing the validity of insurance policy provisions in light of the Act. Wickline v. U.S. Fidelity Guaranty Co., 530 So.2d 708, 711 (Miss. 1988); State FarmMutual Automobile Insurance Co. v. Nester, 459 So.2d 787, 789-791 (Miss. 1984). See generally, Phillips, A Guide toUninsured Motorist Insurance Law in Mississippi, 52 Miss.L.J. 255, 259-265 (1982). The statute is intended to be remedial in nature and thus broadly construed. Parker v. Cotton BeltInsurance Co., 314 So.2d 342, 344 *Page 346 
(Miss. 1975). Ambiguities in policy provisions are to be construed in favor of the injured insured motorist. CommercialUnion Insurance Co. v. Dairyland Insurance Co., 584 So.2d 405, 408 (Miss. 1991); Hartford Accident Indemnity Co. v. Bridges,350 So.2d 1379 (Miss. 1977). Where the policy provision conflicts with the statute, the statute prevails. Lowery v. State FarmMutual Automobile Insurance Co., 285 So.2d 767 (Miss. 1973).
At issue in the case sub judice is whether the Named Driver Exclusion endorsement which both Randy and Pakita Payne signed and which stated clearly that all coverage under the policy, including uninsured motorist insurance, was not in effect at any time when the named driver, Randy, operated the insured vehicle, conflicts with the intents and purposes of § 83-11-101 et seq. Appellants contend, however, that the statute permits the rejection of uninsured motorists insurance if that rejection is in writing; that the exclusion was a binding and enforceable contract provision; and further, that the Paynes were not theinnocent insured motorists the statute was intended to protect, pursuant to Rampy, 278 So.2d at 432. The Circuit Court found that the Named Driver Exclusion conflicted with the statute, and thus was void. We agree.
 A.
Miss. Code Ann. § 83-11-101 (Supp. 1990) indeed states that "[t]he coverage herein required shall not be applicable where any insured named in the policy shall reject the coverage in writing . . ." It further provides for partial rejection of uninsured motorist coverage; to wit, § 83-11-101(3) states that "[t]he insured may reject the property damage liability insurance coverage required by subsection (2) and retain the bodily injury liability coverage required by subsection (1), but if the insured rejects the bodily injury liability coverage he may not retain the property damage liability insurance coverage." Appellants thus contend that the written endorsement, signed by both Randy and Pakita, was "a valid conditional rejection of UM coverage." Pakita, however, specifically requested and paid for uninsured motorist coverage in addition to both bodily injury and property damage liability insurance when she obtained the policy from Atlanta. When an insurance company requires its insured to execute an exclusionary endorsement contrary to our law and statutes, it is void.
Citing Wickline v. U.S. Fidelity Guaranty Co.,530 So.2d 708, 714 (Miss. 1988) for the proposition that "[t]he judicial eye reads only the positive command of the statute," Atlanta Casualty contends that the Circuit Court ignored that directive in failing to recognize that "the positive command of § 83-11-101
is that an insured may reject UM coverage in writing, as did Pakita Payne whenever Randy Payne was driving the insured car." In so suggesting, the Appellant overlooks this Court's repeated holding that "the injured party should be treated as if injured by a responsible party." Lawler, 569 So.2d at 1154. As we further stated in Lawler, "[m]ore importantly, our statutecommands that the injured party shall be able to recover from the UM carrier `all sums which he shall be legally entitled to recover as damages for bodily injury or death from the owner or operator of an uninsured motor vehicle.'" Id., quoting §83-11-101 (emphasis added). The record indicates that despite Randy's suspended license and his exclusion from the policy on Pakita's vehicle, the Paynes were legally entitled to recover from Thompson, the uninsured motorist who was responsible for the accident.
In construing exclusionary provisions contained within uninsured motorist policies, this Court consistently has operated under the premise that "the decision as to whether uninsured motorist coverage is available is a matter to be decided from the perspective of the injured insured." Nester, 459 So.2d at 790;Harthcock v. State Farm Mutual Automobile Insurance Co.,248 So.2d 456 (Miss. 1971), Hodges v. Canal Insurance Co.,223 So.2d 630 (Miss. 1969). These decisions reaffirm the humanitarian purposes of the statute and repeated exhortations that "[i]t must always be noted that *Page 347 
uninsured motorists coverage is designed for the benefit of insureds and not insurers." Couch on Insurance, 2nd Ed. § 45:624.
Thus, the overwhelming number of uninsured motorist insurance policy exclusion provisions that this Court has considered have been found to be void and against public policy. The case law in this and other jurisdictions has focused on "owned motor vehicle" exclusions, wherein an insurance company has sought to exclude from coverage injuries caused by an uninsured motorist occurring while the insured is either driving or riding as a passenger in a vehicle either specifically excluded from or not named in the uninsured motorist policy. See, e.g., Lowery v. State FarmMutual Automobile Insurance Co., 285 So.2d 767 (Miss. 1973) (policy provision excluding vehicles not listed on declaration void as against public policy, therefore son of insured allowed to recover from injuries sustained when hit by uninsured motorist while riding motorcycle).
Our body of jurisprudence covering variations on the "named driver exclusion" theme is rather sparse, but no less protective of the injured insured. In State Farm Mutual AutomobileInsurance Co. v. Nester, 459 So.2d 787 (Miss. 1984), this Court held that where there was a policy provision which precluded liability claims against a "permissive operator" of the insured vehicle, the injured insured passenger could recover under her father's uninsured motorist coverage for injuries she sustained when her uninsured boyfriend, whom her father had expressly forbidden to drive the car, collided with a police car in an accident proximately caused by his negligence. The Nester court criticized Aitken v. State Farm Mutual Automobile InsuranceCo., 404 So.2d 1040 (Miss. 1981), wherein the insured was injured when her uninsured fiance drove her car into a telephone pole. Although the Court focused on interspousal immunity since the insured filed suit against the insurance company after the wedding, it was held that her uninsured motorist coverage was not applicable. The Court in Nester declared the Aitken decision to be "an anomaly in this state's jurisprudence. It rejected a rule of law which has been steadily followed since 1969 . . . it failed to cite the cases in which that rule is announced and, moreover, it failed to cite authority for the rule it purported to announce." Nester, 459 So.2d at 792.
In considering other aspects of uninsured motorist coverage, this Court has likewise approached its decisions from the perspective of the injured insured and rejected any attempts to contract away the protections afforded by the statute. In Hodgesv. Canal Insurance Co., 223 So.2d 630 (Miss. 1969), this Court upheld the application of an injured insured's uninsured motorist policy when the party at fault's insurance company refused to pay because of its insured's failure to co-operate. The "stacking" of policy limits has been consistently upheld; even when the "injured person" was a passenger of the "named insured," he was entitled to the stacking of the named insured's other automobile policies. Wickline v. U.S. Fidelity Guaranty Co.530 So.2d 708 (Miss. 1988).
The Circuit Court, after citing the familiar tenets of this Court, observed that "[u]nder the Named Driver Agreement as found in the subject policy, it is clear that some unfortunate denials of uninsured motorist coverage unintended by the Act could occur." It takes little imagination to come up with everyday situations wherein the insurer could deny coverage because of the exclusion, e.g. if Randy were sitting in the parked car with the engine running to keep the air conditioning and tape player going while Pakita dashed into a store, technically putting him in the "care, custody or control" of the insured vehicle, and it was hit by an uninsured motorist. At the risk of belaboring the point, would the exclusion preclude recovery if the insured vehicle were damaged or injuries occurred as the result of the negligence of an uninsured driver while Randy was washing and waxing it?
 B.
Atlanta Casualty further seeks to justify the exclusion endorsement on the authority *Page 348 
of Miss. Code Ann. § 83-11-3 (1972), which provides for the cancellation of a policy if:
 b) the driver's license or motor vehicle registration of the named insured, or any other operator who either resides in the same household or customarily operates an automobile insured under the policy, has been under suspension or revocation during the policy period . . . further use of the insured vehicle by an excluded driver shall be grounds for immediate cancellation of a policy.
There is certainly a valid and legitimate business purpose in excluding from liability coverage a driver whose license has been suspended or whose driving record is particularly poor. As the Circuit Court noted, however, what is the relevance of the excluded driver's record when his actions are not the proximate cause of the insureds' injuries? As Rampy and its progeny have stated, the purpose of the Act and of uninsured motorist insurance is to protect against financially irresponsible (i.e. uninsured) motorists by compensating for injuries proximately caused by their negligence. Further, if any unlicensed driver other than Randy had been driving Pakita's car when it was involved in an accident proximately caused by an uninsured motorist, there is nothing in the language of the endorsement that would have precluded the Paynes from recovering damages under the policy.
 C.
Atlanta Casualty argues that the Paynes are not the innocent
insureds which the statute is intended to protect, asserting that they "knowingly violated the insurance agreement . . . with full knowledge that there was no coverage of any kind available to them should they be involved in an accident, regardless of who was at fault." Although the Paynes do not contend that the exclusion agreement was ambiguous or lacking in clarity, the record strongly suggests that at the time they signed it, Pakita was not fully aware of the ramifications of the endorsement. Although she appeared to understand the full meaning of the language of the exclusion when questioned about it at the deposition, other testimony indicates that at the time she applied for the policy, she understood only that the exclusionary provision applied if they were at fault for an accident. Wanda Self, the Payne's insurance agent testified that she had not specifically told the couple that they were rejecting uninsured motorist coverage as well as liability coverage when Randy drove the car.
This Court stated in Hartford Accident Indemnity Co. v.Bridges, 350 So.2d 1379, 1381 (Miss. 1977) that in order to limit uninsured motorist coverage, "it must be done in clear and unambiguous language that it may be readily seen and understood by the insured at the time the coverage is limited." Further, any ambiguities must be construed against the insurer. Id. at 1381-1382. Although the Paynes do not contend that the language of the exclusionary provision was ambiguous, the record indicates that they did not have a sufficient understanding of the ramifications of its language to make an informed partial rejection or waiver of uninsured motorist coverage when they signed the exclusion agreement. We believe that it is a logical corollary to the rule of Bridges to place the burden of proof on the insurer to show that such an exclusion or any other quasi-rejection of uninsured motorist insurance was a knowing and informed decision. See, Government Employees Insurance Co. v.Mitchell, 433 So.2d 579 (Fla.App. 1983) (insurer failed to meet burden of showing that husband made affirmative, knowing rejection of uninsured motorist coverage, thus wife entitled to recover as if she had full coverage).
 D.
This Court has consistently viewed any attempts by insurance companies to contract away the protections afforded to injured insureds by the Uninsured Motorists Act as invalid. The humanitarian purposes of the statute have been furthered by decisions made from the perspective of the injured insured, enabling the same recovery which would have been possible had the *Page 349 
injury been caused by a financially responsible motorist.
Accordingly, we affirm the Circuit Court's finding that the Named Driver Exclusion provision of the Uninsured Motorist policy is invalid and contrary to the statute and the holdings of this Court and that it should be deleted immediately from the policy.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and BANKS, JJ., concur.
DAN M. LEE, P.J., concurs in results only.