**REVISED**

United States Court of Appeals,

Fifth Circuit.

No. 96-60815

Summary Calendar.

Gary P. BOATNER;  Paula K. Boatner, Plaintiffs-Appellees,

v.

ATLANTA SPECIALTY INSURANCE COMPANY, Defendant-Appellant.

June 27, 1997.

Appeal from United States District Court for the Southern District of Mississippi.

Before W. EUGENE DAVIS, EMILIO M. GARZA and STEWART, Circuit Judges.

STEWART, Circuit Judge:

This case requires us to determine the scope of Mississippi's Uninsured Motorist Act (UM Act).  Bradley Boatner went to Honduras on a humanitarian mission and was killed as he rode in the back of a flatbed truck.  Both the owner and the driver of the truck were uninsured.  Boatner's parents sought payment from Atlanta Specialty Insurance Company (Atlanta Specialty) pursuant to the uninsured motorist endorsement in the Boatners' automobile policy.  Atlanta Specialty denied coverage, asserting a territorial restriction in the policy, which limited recovery to losses occurring within the United States (and its territories and possessions), Canada, and Puerto Rico.  The Boatners brought a declaratory judgment suit in state court, and the case was removed to federal court on the basis of diversity jurisdiction.  Atlanta Specialty moved for judgment on

1

the pleadings, but the district court denied the motion, holding that the territorial restriction was against Mississippi public policy as embodied in the UM Act. At the conclusion of discovery, Atlanta Specialty moved for summary judgment, again arguing that the territorial restriction in the Boatners' policy precluded coverage. The district court denied the motion for the same reasons it denied Atlanta's motion for judgment on the pleadings. Atlanta Specialty appeals. Because we find that the territorial restriction in the Boatners' policy does not violate Mississippi public policy, we reverse and render judgment for Atlanta Specialty.

BACKGROUND

On January 18, 1994, seventeen-year-old Bradley Boatner, together with members of the Pearl River Baptist Association Brotherhood, traveled to a rural mountainous area in Honduras to provide humanitarian medical relief to citizens of that region. It had been raining that day. At about dusk, the medical team (approximately 25-30 in all) loaded into the back of an open flatbed truck and departed on a dirt road. Boatner was seated on a box of supplies in the left, front corner of the truck (i.e., behind the driver). As the truck proceeded along the dirt road at approximately 20-30 miles per hour, the driver noticed a hole in the road and attempted to drive around it. As the driver negotiated the hole, he came too close to the edge of the road, and because it had been raining, the soil gave way. The truck teetered for a moment and then veered off the road, throwing Boatner from

2

the truck. Boatner was killed instantly. Other members of the medical team were also seriously injured. Neither the owner of the truck nor the driver owned automobile insurance.

PROCEDURAL HISTORY

Gary P. Boatner and Paula K. Boatner (the parents of Bradley Boatner) had purchased an automobile insurance policy from Atlanta Specialty, which provided for $100,000 per person in uninsured motorist coverage. The Boatners owned and insured three vehicles, making available $300,000 in uninsured motorist coverage. The Boatners' policy, however, contained the following territorial restriction applicable to the entire policy:

POLICY PERIOD AND TERRITORY

A. This policy applies only to accident and losses which occur:

    1. ....

    2. Within the policy territory.

B. The policy territory is:

    1. The United States of America, its territories or possessions;

    2. Puerto Rico; or

    3. Canada.

On August 31, 1994, the Boatners, through counsel, sought payment under the uninsured motorist provision of the policy to compensate them for the death of their son. Atlanta Specialty denied coverage, stating that the territorial restriction in the policy precluded coverage because Bradley Boatner's death occurred in Honduras, which plainly brought the Boatners' claim within the

3

terms of the exclusion.

The Boatners thereafter filed a declaratory judgment action in state court, and the case was removed to federal court on the basis of diversity jurisdiction. Atlanta Specialty moved for judgment on the pleadings, arguing that the unambiguous terms of the territorial restriction precluded coverage as a matter of law. The district court disagreed, holding that the territorial restriction was against Mississippi public policy as embodied in the UM Act. At the conclusion of discovery, Atlanta Specialty moved for summary judgment, asserting the arguments made in its pre-discovery motion. The district court denied the motion as frivolous and ordered Atlanta Specialty to pay the Boatners' legal expenses in connection with defending the motion. Rather than go through a trial on the merits, Atlanta Specialty stipulated to $275,000 in damages plus attorneys' fees totaling $1,500 (for having to defend the frivolous summary judgment motion). This appeal followed.

## DISCUSSION

Whether the territorial restriction in Atlanta Specialty's uninsured motorist policy violates Mississippi public policy is an issue of first impression. It is by now well-settled that in making an *Erie [R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)] guess "[w]e are emphatically not permitted to do merely what we think best; we must do that which we think the Mississippi Supreme Court would deem best." *Jackson v. Johns-Manville Sales Corp.,* 781 F.2d 394, 397 (5th Cir.) (en banc), *cert. denied,* 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986).

4

"[U]nder *Erie* we cannot skirt the clear import of state decisional law solely because the result is harsh." *Parson v. United States,* 460 F.2d 228, 234 (5th Cir.1972) (quoted in *Jackson,* 781 F.2d at 397). We review *de novo* the district court's interpretation of an insurance contract. *Mulberry Square Productions, Inc. v. State Farm Fire & Cas. Co.,* 101 F.3d 414, 420 (5th Cir.1996) (interpreting Mississippi law). Any ambiguity in the policy is construed against the insurer, and exclusions in uninsured motorist policies are strictly construed. *See State Farm Mut. Auto. Ins. Co. v. Nester,* 459 So.2d 787, 790 (Miss.1984).[1]

## I. MISSISSIPPI'S UNINSURED MOTORIST STATUTE—ITS LEGISLATIVE BIRTH AND JUDICIAL UPBRINGING

Section 83-11-101—Mississippi's UM Act—provides in part as follows:

> (1) No automobile liability insurance policy or contract shall be issued ... unless it contains an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages for bodily injury or death from the owner or operator of an uninsured motor vehicle, *within limits which shall be no less than those set forth in the Mississippi Motor Vehicle Safety Responsibility Law....*

(Emphasis added.) Mississippi's UM Act therefore incorporates by

---

[1] The Mississippi Supreme Court has found various provisions of uninsured motorist policies ambiguous. *See Government Employees Ins. Co. v. Brown,* 446 So.2d 1002, 1006 (Miss.1984) (limitation of liability clause); *Pearthree v. Hartford Accident & Indem. Co.,* 373 So.2d 267, 270-71 (Miss.1979) (same); *Hartford Accident & Indem. Co. v. Bridges,* 350 So.2d 1379, 1381-82 (Miss.1977) (same); *compare Blansett v. American Employers Ins. Co.,* 652 F.2d 535, 536-37 (5th Cir. Unit A Aug.1981) (per curiam) (holding that limitation of liability clause was unambiguous). There is no dispute in this case that the territorial restriction in the Boatners' policy, if valid, unambiguously precludes coverage for the death of Bradley Boatner.

reference the limitations found in Mississippi's Motor Vehicle Safety Responsibility Act, which provides in part:

> (2) Such *owner's policy* of liability insurance:
>
> *     *     *     *     *     *
>
> (b) shall pay on behalf of the insured named therein ... all sums which the insured shall become legally obligated to pay as damages arising out of the ownership, maintenance or use of such motor vehicles *within the United States of America or the Dominion of Canada, subject to limits* ... as follows:  ten thousand dollars ($10,000.00) because of bodily injury to or death of one (1) person in any one (1) accident and, subject to said limit for one (1) person, twenty thousand dollars ($20,000.00) because of bodily injury to or death of two (2) or more persons in any one (1) accident, and five thousand dollars ($5,000.00) because of injury to or destruction of property of others in any one (1) accident.
>
> (3) Such *operator's policy* of liability insurance shall pay on behalf of the insured ... all sums which the insured shall become legally obligated to pay as damages ... within the same *territorial limits* and subject to the same limits of liability *as are set forth above with respect to an owner's policy of liability insurance.*

MISS.CODE ANN. § 63-15-43 (1996) (emphasis added).

Although neither statute is "a paradigm of legislative exactitude,"[2] our task nonetheless is to determine whether the UM Act incorporates the Safety Responsibility Act's territorial restriction, such that the UM Act's scope is limited to accidents involving uninsured motorists in the United States and Canada.  For if it does, then we must conclude that the territorial restriction in Atlanta Specialty's policy does not violate Mississippi public policy.  Before we get to this question, however, we find it

---

[2]*Missouri Gen. Ins. Co. v. Youngblood,* 515 F.2d 1254, 1256 (5th Cir.1975).

helpful to briefly recount the legislative birth of the UM Act and the judicial gloss placed upon the relationship between the UM Act and the Safety Responsibility Act.

*A. The UM Act's Legislative Birth*

Enacted in 1952, Mississippi's Safety Responsibility Act provided innocent persons killed or injured in automobile accidents with compensation for injuries resulting from a driver's negligence. *See Travelers Indem. Co. v. Watkins,* 209 So.2d 630, 632 (Miss.1968); *see generally* Richard T. Phillips, *A Guide to Uninsured Motorist Insurance Law in Mississippi,* 52 MISS.L.J. 255, 257 (1982). The statute provided that insurers would provide specified amounts of liability coverage for accidents occurring in the United States and Canada. § 63-15-43(2)(b), (3). However, the Safety Responsibility Act left essentially three gaps in coverage: negligent drivers would often violate the law and fail to purchase liability insurance; coverage was denied on the basis of uninsured motorist exclusions or policy breaches; and the tortfeasor sometimes happened to be a hit-and-run driver. Phillips, 52 MISS.L.J. at 258.

The UM Act was designed to fill these gaps. Otherwise known as " "family protection insurance,' " uninsured motorist coverage "provide[s] innocent injured motorists a means of recovery of all sums to which they are entitled from an uninsured motorist." *Wickline v. United States Fidelity & Guar. Co.,* 530 So.2d 708, 712 (Miss.1988). Indeed, the UM Act was hailed as "an example of the successful interworkings of the legislature, the insurance

7

industry, the courts, and advocates representing injured Mississippians." Phillips, 52 MISS.L.J. at 255; *see also Rampy v. State Farm Mut. Auto. Ins. Co.,* 278 So.2d 428, 431-32 (Miss.1973) (noting the insurance industry's role in passing the UM Act). In particular, because the Safety Responsibility Act only offered incentives to purchase liability insurance, those injured by persons without liability coverage were often left without adequate monetary compensation for their injuries. Phillips, 52 MISS.L.J. at 257. The UM Act eliminated this "one free accident" scenario and provided that insurance companies must provide Mississippi motorists with the same level of uninsured motorist coverage provided in the Safety Responsibility Act. *Id.* at 258. With this basic framework on the books, Mississippi courts were trusted with the job of defining the precise contours of the UM Act.

*B. The UM Act's Judicial Upbringing*

The Mississippi Supreme Court has applied a relatively thick coat of judicial gloss to the UM Act. Four principles form the basis of our *Erie* guess.[3]

First, the Mississippi Supreme Court has repeatedly stated that courts should liberally construe the provisions of the UM Act

---

[3]In *Atlanta Cas. Co. v. Payne,* 603 So.2d 343 (Miss.1992), the Mississippi Supreme Court suggested that there are three principles that should guide our interpretation of the UM Act. *Id.* at 345-46 (liberal construction; construing ambiguous provisions against the insurer; and statute prevails in policy-statute conflict). We have remained faithful to this command but have broadened our analysis somewhat to account for the unique facts, circumstances, and arguments presented in this case.

to effectuate the remedial and humanitarian purposes of the Act.[4] Second, uninsured motorist provisions within automobile insurance policies must be interpreted from the standpoint of the injured insured.[5] Third, if the provisions of the UM Act provide broader protection than the uninsured motorist policy, then the terms of the Act become part of the policy, providing the insured a statutory level of monetary protection.[6] Fourth, although the

---

[4]*See Johnson v. Preferred Risk Auto. Ins. Co.,* 659 So.2d 866, 871-72 (Miss.1995); *Aetna Cas. & Sur. Co. v. Williams,* 623 So.2d 1005, 1008 (Miss.1993); *State Farm Mut. Auto. Ins. Co. v. Davis,* 613 So.2d 1179, 1181 (Miss.1992); *Payne,* 603 So.2d at 345; *Harris v. Magee,* 573 So.2d 646, 651 (Miss.1990); *Lawler,* 569 So.2d at 1153; *Cossitt v. Federated Guar. Mut. Ins. Co.,* 541 So.2d 436, 440 (Miss.1989); *Wickline,* 530 So.2d at 711; *Mississippi Farm Bureau Mut. Ins. Co. v. Garrett,* 487 So.2d 1320, 1324 (Miss.1986); *State Farm Mut. Auto. Ins. Co. v. Daughdrill,* 474 So.2d 1048, 1052 (Miss.1985); *Nester,* 459 So.2d at 790, 792; *Dunnam v. State Farm Mut. Auto. Ins. Co.,* 366 So.2d 668, 671 (Miss.1979); *Stevens v. United States Fidelity & Guar. Co.,* 345 So.2d 1041, 1043 (Miss.1977); *Lowery,* 285 So.2d at 770; *Rampy v. State Farm Mut. Auto. Ins. Co.,* 278 So.2d at 432; *see also Preferred Risk Ins. Co. v. Insurance Co. of N. Am.,* 824 F.Supp. 614, 619 (S.D.Miss.1993); *Curry v. Travelers Indem. Co.,* 728 F.Supp. 1299, 1300 (S.D.Miss.1989); *Preferred Risk Mut. Ins. Co. v. Poole,* 411 F.Supp. 429, 437 (N.D.Miss.), *aff'd per curiam,* 539 F.2d 574 (5th Cir.1976).

[5]*See Payne,* 603 So.2d at 346; *Nester,* 459 So.2d at 790, 792-93; *Dunnam,* 366 So.2d at 671; *Southern Farm Bureau Cas. Ins. Co. v. Roberts,* 323 So.2d 536, 538 (Miss.1975) (quoting *Van Tassel v. Horace Mann Mut. Ins. Co.,* 296 Minn. 181, 207 N.W.2d 348, 351-52 (1973)); *Parker v. Cotton Belt Ins. Co.,* 314 So.2d 342, 344 (Miss.1975); *Harthcock v. State Farm Mut. Auto. Ins. Co.,* 248 So.2d 456, 458 (Miss.1971); *Hodges v. Canal Ins. Co.,* 223 So.2d 630, 634 (Miss.1969); *see also Poole,* 411 F.Supp. at 439.

[6]*See Dunnam,* 366 So.2d at 670; *State Farm Mut. Auto. Ins. Co. v. Moore,* 289 So.2d 909, 911 (Miss.1974) (interpreting the Safety Responsibility Act); *United States Fidelity & Guar. Co. v. Stafford,* 253 So.2d 388, 391 (Miss.1971); *see also Universal Underwriters Ins. Co. v. American Motorists Ins. Co.,* 541 F.Supp. 755, 760 (N.D.Miss.1982) (interpreting the Safety Responsibility Act); *Poole,* 411 F.Supp. at 436.

Mississippi Supreme Court has not always closed its judicial eye to the insurance law of other jurisdictions,[7] the court has more recently suggested that courts interpreting Mississippi uninsured motorist law should be "guided by [the terms of Mississippi's] uninsured motorist statute, not the jurisprudence of foreign jurisdictions."[8]

Based on these principles of uninsured motorist coverage, the

---

[7]*See McCoy v. South Cen. Bell Tel. Co.,* 688 So.2d 214, 215-16 (Miss.1996) (looking to other jurisdictions' view of whether self-insured companies are required to provide uninsured motorist coverage to their employees or lessees); *Cossitt,* 541 So.2d at 441-42 (relying on interpretations of "analogous" uninsured motorist statutes); *State Farm Mut. Auto. Ins. Co. v. Kuehling,* 475 So.2d 1159, 1162-63 (Miss.1985) (looking for guidance to "similar" uninsured motorist statutes which provide for underinsured motorist coverage); *Daughdrill,* 474 So.2d at 1053-54 (declining to follow interpretations of other states' dissimilar uninsured motorist statutes); *Talbot v. State Farm Mut. Auto. Ins. Co.,* 291 So.2d 699, 701 (Miss.1974) (looking to authority of other states regarding whether insureds, under uninsured motorist policies, can aggregate coverage provided in a single insurance policy which insures more than one vehicle), *overruled on other grounds, Government Employees Ins. Co. v. Brown,* 446 So.2d 1002 (Miss.1984); *Lowery,* 285 So.2d at 771-77 (reviewing cases interpreting other states' uninsured motorist statutes and concluding that "the great weight of authority supports the [plaintiff's] contention that the exclusionary clause violates the public policy of this state"); *Rampy,* 278 So.2d at 432-34 (looking for guidance to interpretations of "similar, if not identical" uninsured motorist statutes); *McMinn,* 276 So.2d at 685 (treating as "persuasive and enlightening" other uninsured motorist statutes which do not contain the exact phraseology of the UM Act); *Harthcock,* 248 So.2d at 461-62 (looking to other jurisdictions' interpretation of "other insurance" clause); *Travelers Indem. Co. v. Chappell,* 246 So.2d 498, 501-04 (Miss.1971) (adopting view among states that if two escape clauses within insurance policy operate to negate coverage, those escape clauses are null and void).

[8]*Harris v. Magee,* 573 So.2d at 653; *see also Wickline,* 530 So.2d at 714; *Dunnam,* 366 So.2d at 672. Our case law is in accord with this view. *See Johnston v. Safeco Ins. Co. of Am.,* 727 F.2d 548, 550 (5th Cir.1984) (per curiam) (rejecting plaintiff's argument because it rested on state uninsured motorist statutes "that are grossly different from Mississippi's").

Mississippi Supreme Court has stated that "the overwhelming number of uninsured motorist insurance policy exclusion provisions that this Court has considered have been found to be void and against public policy." *Payne,* 603 So.2d at 347.[9] Of course this does not mean that every exclusion necessarily violates Mississippi public policy, for some provisions have survived challenges brought by Mississippi insureds.[10] Policy terms that meet the minimum requirements under the UM Act by definition cannot run counter to

[9]*See Nationwide Mut. Ins. Co. v. Garriga,* 636 So.2d 658, 663-65 (Miss.1994) (declaring invalid offset provision which operated to deny insured the maximum excess coverage the insured paid for); *Employers Mut. Cas. Co. v. Tompkins,* 490 So.2d 897, 904-05 (Miss.1986) (declaring void policy provision which stated that nonlisted vehicles would not be covered, but failed to inform insured that insured would not receive minimum statutory coverage); *Nester,* 459 So.2d at 793 (holding that policy exclusion for uninsured motorist claims involving permissive users violated Mississippi public policy as expressed in the UM Act); *State Farm Mut. Auto. Ins. Co. v. Bishop,* 329 So.2d 670, 673 (Miss.1976) ("An insurance company cannot by the provisions in one uninsured motorist endorsement limit its liability and endorsement in a separate policy and defeat the mandatory provisions of the statute."); *Talbot,* 291 So.2d at 703 (declaring invalid clause which reduced uninsured motorist coverage by amounts paid under medical coverage provisions of policy); *Lowery,* 285 So.2d at 771-77 (declaring invalid restriction in policy that required "insured" to own the automobile described in the policy until uninsured motorist coverage applied); *Harthcock,* 248 So.2d at 459-60, 461-62 (holding that conditioning uninsured motorist coverage on insured's agreement to not settle with other tortfeasors contravenes the UM Act; also declaring void "other insurance" provision of policy which operated to relieve insurer of payment if insured secured statutory minimum from other source); *see also Youngblood,* 515 F.2d at 1256-58 (declaring invalid provision in policy which reduced uninsured motorist coverage based on amounts paid under bodily injury liability provision); *Poole,* 411 F.Supp. at 439 (declaring invalid policy provision which excluded occupants of vehicle from uninsured motorist coverage).

[10]*See, e.g., Talbot,* 291 So.2d at 701 (declaring valid a limitation of liability provision, which permitted parties to contract to statutory minimum).

11

Mississippi public policy. *See, e.g., Gillespie v. Southern Farm Bureau Cas. Ins. Co.,* 343 So.2d 467, 470 (Miss.1977); *Travelers Indem. Co. v. Chappell,* 246 So.2d at 509 (interpreting the Safety Responsibility Act); *see also Black v. Fidelity & Guar. Ins. Underwriters, Inc.,* 582 F.2d 984, 989 (5th Cir.1978).

II. DOES THE TERRITORIAL RESTRICTION IN ATLANTA Specialty'S UNINSURED MOTORIST POLICY VIOLATE MISSISSIPPI PUBLIC POLICY AS EXPRESSED IN THE UM ACT?

With this background in mind, we now turn to the central question presented in this appeal: Did the Mississippi legislature intend, without explicitly saying so, to provide Mississippians worldwide uninsured motorist coverage? Or did the legislature import into the UM Act the territorial limits prescribed by the Safety Responsibility Act? We have looked at the statute, canvassed the case law and commentary in this area, and conclude that nothing in the language or purpose of the statute or the case law supports the conclusion that the UM Act expresses a policy judgment that Mississippians are entitled to worldwide uninsured motorist coverage. Instead, we find that the UM Act is subject to the same territorial restrictions found in the Safety Responsibility Act.

*A. The UM Statute—Its Plain Meaning and its Purpose*

A bedrock principle of statutory construction in Mississippi is that courts should strive to effectuate the intent of the legislature and the purpose of the legislation. *See Easterling v. Howie,* 179 Miss. 680, 176 So. 585 (1937). Legislative intent, the Mississippi Supreme Court has said, is the " "pole star of

12

guidance.' " *Evans v. Boyle Flying Serv., Inc.,* 680 So.2d 821, 825 (Miss.1996) (quoting *Quitman County v. Turner,* 196 Miss. 746, 18 So.2d 122, 124 (1944)). At the same time, we have been instructed to avoid deciding "what the law ought to be" and focus instead on "the *positive* command of the statute." *Wickline,* 530 So.2d at 714 (emphasis added); *see also Brown v. Hartford Ins. Co.,* 606 So.2d 122, 125 (Miss.1992). We must show "due regard ... for the differing functions of the legislative and judicial branches of government. Such due regard prevents us from rewriting the statutes to reach a more preferable result under the pretext of interpretation." *Cossitt,* 541 So.2d at 442; *see also Harris v. Magee,* 573 So.2d at 655.

At the outset, we note that it is far from clear that if the UM Act does not include the territorial limitations of the Safety Responsibility Act, it must follow that the UM Act mandates worldwide uninsured motorist coverage. For one can plausibly argue that absent the territorial restriction, the UM Act is silent as to territorial scope and an insurer may therefore limit coverage to Mississippi alone. This conclusion would be in keeping with *Daughdrill,* 474 So.2d 1048, in which the Mississippi Supreme Court (interpreting the UM Act) held that "a statute which enumerates and specifies the subjects or things upon which it is to operate, is to be construed as excluding from its effect those subjects not expressly mentioned or included under a general clause." *Id.* at 1051 (construing *Southwest Drug Co. v. Howard Bros. Pharmacy,* 320 So.2d 776 (Miss.1975)); *see also Cossitt,* 541 So.2d at 440

13

(applying the principle to the UM Act).

However, we do not believe that the Mississippi legislature intended to restrict uninsured motorist coverage to Mississippi alone. By referring to the "limits" of the Safety Responsibility Act, the Mississippi legislature plainly intended to import into the UM Act the protections afforded by the Safety Responsibility Act (which provides coverage for the United States and Canada). *See Belk v. Bean,* 247 So.2d 821, 828 (Miss.1971) ("Where statutes refer specifically to another statute, it specifically embodies the statute referred to into the adopting statute. The effect of the adopting of an earlier statute is to incorporate the entire section of the earlier statute, the same as if recopied in the later statute.").

The district court's conclusion that the plain terms and purpose of the UM Act provide worldwide uninsured motorist coverage rests on two grounds. First, the district court reasoned that because the UM Act did not explicitly state that uninsured motorist coverage is subject to a territorial restriction, "[t]he Court will not read provisions into the UM Act which were not included by the legislature." Second, the district court concluded that the term "limits" in the UM Act refers only to the monetary, and not territorial, limits in the Safety Responsibility Act. The district court reached this conclusion based on the "ordinary meaning" of the word "limits" in insurance policies and the fact that "limits" in the Safety Responsibility Act appears after the territorial restriction in that statute. From these two premises, the district

14

court held that "[i]f the insurance companies are opposed to providing [worldwide uninsured motorist] coverage, their remedy lies with the Mississippi legislature and not with this Court." We are not persuaded.

The district court's first rationale simply proves too much. Just because the Mississippi legislature did not explicitly include a territorial restriction in the UM Act does not mean that uninsured motorist coverage should extend to automobile accidents occurring around the world. The district court itself read into the UM Act the monetary limits found in the Safety Responsibility Act even though those monetary limits do not appear on the face of the UM Act.

Moreover, rather than support such a construction of the UM Act, the plain terms of the UM Act in fact belie the contention that the Act represents an across-the-board policy judgment that Mississippians shall receive worldwide uninsured motorist coverage. As we have pointed out, the UM Act incorporates the "limits" of the Safety Responsibility Act. The Safety Responsibility Act distinguishes between policies issued to owners and those issued to operators. § 63-15-43(2)(a) & (b) (owners); § 63-15-43(3) (operators). Notably, although not stated as such in the section applicable to *owners* of automobiles, subsection (3) of the Safety Responsibility Act imports the "territorial limits" applicable in subsection (2)(b). This reference to "territorial limits" in subsection (3) unambiguously suggests that uninsured motorist coverage for policies issued to *operators* of automobiles *is* subject

15

to the territorial restriction in the Safety Responsibility Act. Accordingly, we find it highly implausible (indeed, there is not even a hint) that the Mississippi legislature intended to establish a policy of worldwide coverage for owners of automobiles, but limit coverage to specified territories in operator liability policies—especially because the plain terms of the Safety Responsibility Act provide that owner and operator policies are subject to exactly the same limitations.

More to the point, to the extent that the district court's conclusion can be read to apply to uninsured motorist claims brought under owner *and* operator policies, the district court's reasoning writes the words "territorial limits" out of § 63-15-43(3). This is so for obvious reasons: If, as the district court concluded, the UM Act is not at all subject to the territorial limitations of the Safety Responsibility Act, yet the Safety Responsibility Act explicitly states that operator policies are subject to the "territorial limits" in § 63-15-43(2)(b), then the "territorial limits" language of § 63-15-43(3) is rendered nugatory. We decline to read such critical terms out of the Safety Responsibility Act.

The district court's second rationale fails as well because the district court erroneously concluded that the term "limits" only refers to the monetary limits in the Safety Responsibility Act. Based on the meaning and location of the word "limits," the district court found, by negative implication, that the Mississippi legislature intended through the UM Act to provide Mississippians

16

worldwide uninsured motorist coverage. We conclude that the Mississippi legislature, through nothing more than silence, could not have intended to provide Mississippians such broad-based uninsured motorist coverage.

By all accounts, the UM Act was enacted to fill the gaps left by the Safety Responsibility Act—nothing more and nothing less. As we have said, the Mississippi legislature intended to provide Mississippians injured by uninsured motorists a floor of coverage; the Safety Responsibility Act provides that floor. Nothing in Mississippi case law or commentaries suggests the Mississippi legislature, through the UM Act, addressed the problem of Mississippians injured by uninsured motorists around the world. Notwithstanding the tragic and compelling facts presented in this case, our duty under *Erie* prevents us from finding worldwide uninsured motorist coverage under the UM Act.

In short, we find that the only construction of the UM Act which properly accounts for subsection (3) in the Safety Responsibility Act and recognizes the gap-filling role of the UM Act is that the term "limits" in the UM Act refers to the territorial *and* monetary limitations in the Safety Responsibility Act. The case law bolsters our conclusion.

*B. The Case Law*

We have found no indication in Mississippi case law that the UM Act requires insurers to provide Mississippi insureds worldwide uninsured motorist coverage. We reach this conclusion by analyzing the territorial restriction in the Boatners' policy in light of the

17

four principles we have extracted from Mississippi's uninsured motorist case law.

*1. Liberal Construction*

The Mississippi Supreme Court has instructed us to avoid exceptions or exemptions from coverage under the UM Act. *See In re Guardianship of Lacy v. Allstate Ins. Co.,* 649 So.2d 195, 197 (Miss.1995); *Garrett,* 487 So.2d at 1323. At the same time, however, we simply cannot rewrite the UM Act "to include situations not expressly provided for or contemplated under the guise of liberally construing the statute in order to accomplish its designed purpose." *Cossitt,* 541 So.2d at 440; *see also Medders v. United States Fidelity & Guar. Co.,* 623 So.2d 979, 989 (Miss.1993); *Washington v. Georgia Am. Ins. Co.,* 540 So.2d 22, 25-26 (Miss.1989).

We reiterate that neither the plain language of nor the purpose behind the UM Act suggests that worldwide uninsured motorist coverage represents Mississippi public policy. The Mississippi legislature was simply not concerned with this problem, and the Boatners have provided no persuasive authority to the contrary. The result urged by the Boatners would require us, under the rubric of liberal construction, to extract from the UM Act that which does not exist.

*2. Interpreting the Territorial Restriction from the Standpoint of the Boatners*

This principle of uninsured motorist law essentially turns on the Boatners' expectations with regard to coverage for Bradley Boatner's death. The Mississippi Supreme Court has repeatedly said

18

that the Mississippi legislature intended to put "first accident" insureds in as good a position as they would have been had the uninsured motorist purchased automobile liability insurance pursuant to the terms of the Safety Responsibility Act.[11] Accordingly, our task is to determine whether the Boatners could have expected coverage under their policy if the owner or operator of the flatbed truck was insured.

The answer to this question is plain enough—the Boatners could not have expected coverage under the circumstances of this case because the Safety Responsibility Act provides coverage only for accidents occurring in the United States and Canada. *See, e.g., Spradlin,* 650 So.2d at 1387-88 (declining to find UM Act coverage for shooting that did not involve the operation, use, or maintenance of an automobile when such coverage would not have been available under the Safety Responsibility Act). Thus, both the district court's and the Boatners' reading of the UM Act as providing broader (worldwide) coverage than the Safety Responsibility Act does not square with Mississippi principles of divining the intent behind the UM Act.

*3. Does the UM Act Provide Broader Protection than the Atlanta Specialty Policy?*

---

[11]*See Spradlin v. State Farm Mut. Auto. Ins. Co.,* 650 So.2d 1383, 1387 (Miss.1995); *Payne,* 603 So.2d at 345, 346, 348-49; *Lawler v. Government Employees Ins. Co.,* 569 So.2d 1151, 1154 (Miss.1990); *Aitken v. State Farm Mut. Auto. Ins. Co.,* 404 So.2d 1040, 1043 (Miss.1981), *overruled on other grounds, State Farm Mut. Auto. Ins. Co. v. Nester,* 459 So.2d 787 (Miss.1984); *Lowery v. State Farm Mut. Auto. Ins. Co.,* 285 So.2d 767, 770 (Miss.1973); *Rampy,* 278 So.2d at 432; *McMinn v. New Hampshire Ins. Co.,* 276 So.2d 682, 684 (Miss.1973).

Both the district court and the Boatners rely on language from the Mississippi Supreme Court's decision in *Lowery,* 285 So.2d 767, which states that

> "Whenever bodily injury is inflicted upon [a] named insured or insured members of his family by the negligence of an uninsured motorist *under whatever conditions, locations, or circumstances, any of such insureds happen to be in at the time,* they are covered by uninsured motorist liability insurance ...."

*Id.* at 773 (quoting *Mullis v. State Farm Mut. Auto. Ins. Co.,* 252 So.2d 229, 233 (Fla.1971)). From this statement, the district court and the Boatners conclude that the UM Act provides for worldwide uninsured motorist coverage and that therefore Atlanta Specialty's territorial restriction is void because it provides less protection than that contemplated by the UM Act.[12] We cannot agree.

To begin with, we hesitate to hold that this language is a permanent fixture of Mississippi uninsured motorist law because the language (1) comes from an out-of-state court's interpretation of its own uninsured motorist statute and (2) was quoted, for illustrative purposes, in a series of quoted passages from other jurisdictions. Nonetheless, even if we assume that this language is a correct statement of Mississippi law, we do not subscribe to the district court's or the Boatners' interpretation of that

---

[12]Relying on a decision from the Montana Supreme Court, the Boatners argue that uninsured motorist coverage under the UM Act is "portable." (*Citing Jacobson v. Implement Dealers Mut. Ins. Co.,* 196 Mont. 542, 640 P.2d 908, 912 (1982)). This argument, however, is question-begging because the issue is whether Mississippi's UM Act provides for *worldwide* portability (as opposed to portability within the United States and Canada).

language.  We agree with Atlanta Specialty that the *Lowery* court was not speaking of worldwide uninsured motorist coverage; rather, the court was suggesting—as the plain language of the *Lowery* opinion states—that covered insureds " "may be pedestrians at the time of ... injury, they may be riding in motor vehicles of others or in public conveyances and they may occupy motor vehicles (including Honda motorcycles) owned by but which are not "insured automobiles" of [the] named insured.' " *Lowery,* 285 So.2d at 773 (quoting *Mullis,* 252 So.2d at 233).

*4. Turning a Blind Eye to Foreign Jurisdictions*

Finally, although the Mississippi Supreme Court has not always ignored the view among other American jurisdictions on questions of uninsured motorist law (see *supra* note 7), we have focused our analysis on and grounded our conclusion in the plain terms of the UM Act as well as the Mississippi Supreme Court's interpretation of it.

CONCLUSION

Mindful of the adage that hard cases make bad law, we conclude that the territorial restriction in Atlanta Specialty's uninsured motorist policy does not violate Mississippi public policy as embodied in the UM Act.  Accordingly, we REVERSE the district court's judgment and RENDER judgment for Atlanta Specialty.

REVERSED AND RENDERED.